**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tom T. COLLINS, a/k/a Tom Cotton, a/k/a William Cotton, Defendant-Appellant.**

**No. 17400.**

United States Court of Appeals, Seventh Circuit.

Sept. 16, 1970.

Certiorari Denied Jan. 18, 1971.
See 91 S.Ct. 576.

Thomas A. Foran, William J. Bauer, U. S. Attys., David M. Hartigan, Asst. U. S. Atty., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before MURRAH, Senior Circuit Judge,[1] and KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

Defendant appeals from his conviction by a jury under several counts of an indictment charging unlawful transportation of firearms in violation of 15 U.S. C. § 902(a).[2] We affirm.

### I.

Immediately before the trial began on June 10, 1968, the defendant's attorney told the court that defendant was claiming that during the period covered by the indictment [3] he was suffering from a mental defect. The attorney requested a psychiatric examination of defendant and the court granted the request. The court inquired of the attorney whether there was any question of defendant's competency to stand trial. The attorney stated that defendant was not "now" suffering mental delusion, fully realized the charges against him and was able to communicate with the attorney.

The following morning, June 11, the attorney reported to the court that a Dr. Kastrubala had examined defendant and had said he found no mental defect in defendant during the period subject of indictment, but questioned whether he was competent to stand trial. At the attorney's suggestion, however, the trial proceeded with the understanding that should the verdict be against the defendant the incompetency issue would be raised in a new trial motion. The trial continued to the guilty verdict on the same day.

John J. Cleary, John D. Shullenberger, Chicago, Ill., for defendant-appellant.

1. Senior Circuit Judge Murrah of the United States Court of Appeals for the Tenth Circuit is sitting by designation.

2. § 902(a). It shall be unlawful for any manufacturer or dealer, except a manufacturer or dealer having a license issued under the provisions of this chapter, to transport, ship, or receive any firearm or ammunition in interstate or foreign commerce.

3. February and March, 1967.

On June 17, 1968, a new trial motion was filed, supported by Dr. Kastrubala's "evaluation" and the attorney's affidavit, both to the effect that defendant was not competent to stand trial. Subsequently defendant was examined by a government psychiatrist, Dr. Parzen. On July 18, 1968, the court held a hearing on the issue at which both psychiatrists testified. The court determined that defendant was not incompetent to have stood trial, and denied the motion for new trial. The court then imposed concurrent and consecutive sentences totaling eight years. This appeal followed.

■ We hold, contrary, to defendant's contention, that the district court did not abuse its discretion in denying the motion for new trial, since we think the ruling was not clearly arbitrary or unwarranted. Feguer v. United States, 302 F.2d 214, 236 (8th Cir. 1962); Hall v. United States, 410 F.2d 653, 658 (4th Cir.), cert. denied, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969).

At the new trial hearing the district court conducted a due process hearing with respect to the defendant's competency to stand trial, 18 U.S.C. § 4244, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and made appropriate findings in accordance with the guidelines established by Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). See also Wolcott v. United States, 407 F.2d 1149, 1150 (10th Cir. 1969). The considerations in the decision were the statements of defendant's attorney before and during trial, the testimony of two psychiatrists and defense attorney's affidavit at the incompetency hearing, and the observations of the district court during the trial.

Defendant's attorney stated on the first day of trial that, although there was some question concerning defendant's mental soundness at the time of the alleged offenses, defendant was not "now" suffering from any mental delusions; that he fully realized the significance of the charges against him; and that he was able to intelligently discuss these matters with his attorney. In reporting to the court the next day the results of Dr. Kastrubala's examination, the attorney did not claim that he was having trouble communicating with the defendant. In his affidavit in support of his motion for a new trial filed one week later, however, the attorney stated that "upon the commencement" of the trial he had good cause to question defendant's ability to understand the nature of the proceedings and to cooperate with his attorney.[4] This is contrary to the attorney's answer to the court's direct question on June 10, and clearly inconsistent with the attorney's failure to claim, during either day of trial, that defendant was incompetent.

Dr. Kastrubala examined defendant between 9 and 10 a. m. on June 11 and found him incompetent. He based his opinion upon a consideration of defendant's medical history since March of 1966 of head injury, fainting spells, hypertension and diabetes, and especially noted defendant's inability to cooperate with his physicians during this period in the management of his illnesses. He concluded that since defendant did not cooperate with his physicians, he may not be capable of "cooperating and protecting himself in other areas which seriously affected his life, such as the trial." Dr. Kastrubala also included in his examination several questions addressed to defendant to test his alertness. The answers to the questions were not the responses to be expected from a normal person. For example, the psychiatrist asked the defendant: "What would you do if you saw a person lying in the street?" Answer: "You better let it alone or we will blow you up." "What would you do if you were in a crowded theatre and sitting up in front and smelled smoke?" Answer: "I don't

---

4. " * * * and I was unable to communicate with him to the point where I could inquire as to the testimony of the witnesses, the actions of the defendant and the action he was * * * charged with.

smoke." Also, the psychiatrist said that defendant "could not comprehend" the nature of the examination or recall his attorney's name. Dr. Kastrubala's report indicates defendant's memory of past events was good with respect to his health and work history but poor otherwise. And the doctor's report makes no mention of defendant's mental state during the period of the indictment although this was what the examination was designed for, according to defendant's statement at trial. Dr. Parzen, after examining defendant, effectually found him competent because, among other reasons, he spoke lucidly and in detail about his indictment and his defense strategy. Defendant was in improved health, having received treatment in jail, after the verdict, for his diabetes.

Dr. Kastrubala found that defendant at the trial was suffering from a "chronic brain syndrome." Dr. Parzen related that at the time he examined the defendant he could see no evidence of a "chronic brain syndrome" but suggested that defendant could have had an "acute organic brain syndrome." Dr. Parzen said he could not "document" whether defendant was suffering from an "acute" brain syndrome at the time of trial. He said the only way to do this was to have someone—who was then communicating with defendant and "involved" with him before and during the trial—state how he acted and what change took place and when.

Dr. Kastrubala's examination report of June 11, of course, has the value of immediacy which the later examination of Dr. Parzen does not have. A signal point in the latter's testimony, however, more than compensates for that value. We refer to Dr. Parzen's testimony, mentioned above, concerning the person who would be in the best position to "document" whether defendant was at the

trial suffering from an acute brain syndrome. That person, on this record, could only be the defendant's attorney.

This view was confirmed in the district court's opinion, upon denying a new trial, based so strongly on the inconsistent statements of the defendant's attorney. This, plus the absence of any reliable testimony that defendant could have changed so rapidly between June 10 and 11 and of no diabetic reaction or coma or of any serious effect of hypertension, renders the court's opinion reasonable. Furthermore, the court itself had the impression [5] that Collins could have misled Dr. Kastrubala by his answers to the psychiatrist's questions. The court could reasonably infer from the testimony that defendant was not incompetent to have stood trial.

## II.

■ Defendant contends that the five separate offenses in one month, alleged separately in five counts, was a violation of his protection against double jeopardy. He argues that because the statute he violated was a licensing statute, and the common basis of the five counts was his failure to pay the annual $1.00 license fee, there was accordingly but one offense, failure to pay the fee. He relies upon In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887).

The *Snow* holding was that Snow's three indictments for cohabitation with several women in Utah Territory comprised a "continuous offence * * * and not an offence consisting of an isolated act." *Id.* at 281, 7 S.Ct. at 559. Here defendant's offenses were unlawful transportation of firearms without having a dealer's license. Clearly the required license fee is a means of control of unlawful dealing in firearms. The gist of the offense is the unlawful transportation by a dealer who could have

---

5.   " * * * [Your diagnosis] is based upon the answers he gave you, isn't that true?
   "The Witness: Yes, sir, that is correct.
   "The Court: Those answers are controllable by him, aren't they?

   *   *   *   *   *
   "The Court: What else did he do other than to give stupid answers to questions and forget his lawyer's and your name?"

avoided the unlawful element if he had had a license.

■ The test of identity of offenses when double jeopardy is raised in defense is whether the same evidence is required to sustain them. Morgan v. Devine, 237 U.S. 632, 641, 35 S.Ct. 712, 59 L.Ed. 1153 (1915). *See* United States v. Jones, 248 F.2d 772 (7th Cir. 1957). Here each count charged an offense covering different firearms on different days. There is no substance to the double jeopardy contention.

■ From the foregoing conclusion it follows that there is no merit in the claim that "defendant was subjected to a cruel and inhuman punishment" through the imposition of an eight year sentence "for failure to pay a $1 license fee." The contention is stated dramatically but is an exercise in bad logic. It assumes without warrant that defendant's conviction was merely for failing to pay the fine. Moreover, the sentences for the offenses alleged were within the maximum permitted by law, and some were made concurrent with others. Had they not been concurrent, the actual sentence would have been seventeen years, a sentence still within the maximum for the several offenses.

■ Finally defendant claims he was denied due process because of the court's allegedly improper consideration of prejudicial hearsay information at sentencing. He concedes that consideration of hearsay testimony at sentencing is not *per se* improper. He argues, however, that the court erred in seeking information about guns not in evidence and hearing statements from the government attorney about sales of the guns to unsavory persons and to minors, which the court "undoubtedly" relied upon in imposing sentence.

We have already decided the sentences were neither cruel nor inhuman. Therefore, defendant's argument that "the term of confinement imposed (8 years) demonstrates that this information was relied upon by the trial judge" must fall. Moreover, at sentencing the court stated that although it was aware of the numbers of gun sales, it was limited in its sentencing to the guns covered by the indictment. Indeed, it was the defense who first brought to the court's attention during trial the "large group of guns" taken from defendant's residence as to which "there should be no evidence." The court was told without objection after the verdict of large numbers of guns sent from outside and inside Illinois and of sales of guns. There was a presentence investigation ordered and considered by the court.

We reject the assumption that the court undoubtedly relied upon improper considerations in sentencing defendant.

We find the court did not deny defendant due process.

For the reasons given, the judgment is affirmed.

In this court defendant was represented by John J. Cleary, of the Chicago Bar, appointed by the court. We thank Mr. Cleary for his professional dedicated services.