469 F.2d 1377
 UNITED STATES of America, Appellee,
v.
John Dabney Collier WALKER, Appellant.
 No. 72-1140.
 United States Court of Appeals,
First Circuit.
 Heard Oct. 2, 1972.
Decided Dec. 4, 1972.
 
 John G. S. Flym, Boston Mass., with whom Flym, Geller, Miller, Taylor & Weinberg was on brief, for appellant.
 Robert B. Collings, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.
 Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.
 COFFIN, Chief Judge.
 
 
 1
 Appellant was convicted of failure to register with the Selective Service System, in violation of 50 Appendix U.S.C. Secs. 453, 462. Four days after he became eighteen, he visited his local board and announced that he was not going to register. The executive secretary told him that, by failing to register, he could be subject to imprisonment or a large fine. In response to questions, appellant gave his name, address, and date of birth, and departed. The next day the executive secretary wrote him a letter, noting his birth date, and stressing the importance that he register as soon as possible or else "be suspected of being a delinquent". Appellant did not return to the board, respond to this letter, or otherwise supply the board with the remaining information necessary for registration. Appellant was subsequently found guilty by a jury of failure to register and sentenced to two years imprisonment.
 
 
 2
 Appellant protests both his conviction and his sentence. As his defense on the merits, he cites non-compliance by the board with 32 C.F.R. Sec. 1613.16.[1] Appellant does not contest the fact that, prior to his visit, he knew that his refusal to register could subject him to imprisonment. Cf. United States v. Kelly, 336 F.Supp. 686 (E.D.Pa., 1972). Nevertheless, he relies on Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955) and United States v. Kroll, 402 F.2d 221 (3d Cir. 1968), which required a similar warning procedure under AR 601-270 in the event that an inductee refused to step forward. This procedure, as noted in Chernekoff, at 724, which is part of the prescribed method of induction devised by the Army for use in processing groups of prospective inductees, has several formal steps.[2]
 
 
 3
 The selective service warning mandated by Sec. 1613.16 is not in the context of such final formalities but is, we think, similarly a part of a process which has commenced. The ceremonial warning with witnesses is similarly a last rite to be administered before a crime is committed, i. e., a refusal to cooperate, giving false or evasive answers, or refusing to answer. These are crimes committed during the process of registration. They are not, we think, committed by an anticipatory announcement made by one who has not yet presented himself for and submitted to registration.
 
 
 4
 The regulatory scheme corroborates this interpretation. Regulation 1613.16 is part of Part 1613-Registration Procedures, beginning with Sec. 1613.1 which provides that "[a]ny person required to be registered may present himself for and submit to registration . . . ." This is followed by other sections dealing with the manner of conducting the interview (Sec. 1613.11), completion of the registration card (Sec. 1613.12), signature (Sec. 1613.13), and certification (Sec. 1613.14). At this point is located Sec. 1613.16, indicating that the objective of this regulation is to deal with the registrant who has presented himself for registration but has thereafter manifested his recalcitrance and to give him "a full opportunity . . . to reconsider his actions and answer the questions." United States v. Bigman, 429 F.2d 13 (9th Cir. 1970). Here, appellant had not presented himself for or submitted to registration, and indeed, had not refused to answer any questions. He had merely refused to put in writing the beliefs he had stated orally, not a part of the process of registration.
 
 
 5
 While we recognize that the purpose of the ceremonial warning might well apply to one like appellant, who visits his local board to announce his intention not to register, such an expansive reading of the regulation would leave local board officials in doubt as to when they must invoke the warning-cum-witnesses apparatus of the regulation. Visits of young eligibles could range from those seeking information, to those expressing uncertainty, generalized hostility, and specific intent, and could be subject to different interpretations by visitor and official. We therefore confine the scope of the warning obligation within what we deem a permissible narrow reading of the regulations. We conclude that appellant's motion for acquittal was properly denied.
 
 
 6
 The issue of appellant's sentence is a more vexing one. Appellant was, at the time of his conviction, nineteen years old. He was one of eight children. His father, a surgeon, who had served in World War II, having died, his mother was left with two small children at home. Because appellant took a large degree of responsibility for them, his mother could resume work as a nurse. Appellant's counsel's pre-sentence memorandum contained sixteen letters, from relatives, teachers, school officials and neighbors, all portraying appellant as a pacifist of some years' convictions, as a good student, with no record of school or other infractions, as a mild-mannered but socially aware and constructive person. He had organized and run, according to the Director of Guidance for the Salem public schools, a responsibly conducted draft counselling service. He had organized and helped conduct a storefront arts, crafts, and music school for Salem children.
 
 
 7
 Government counsel willingly conceded that appellant "is an outstanding member of the community" but recommended a two-year prison term for deterrence reasons, arguing that since registration was the first step in the administrative process, enabling the government to assemble its available pool of manpower, failure to register was perhaps even a more serious offense than refusing to report for induction. The court, without articulation of reasons, imposed a two-year prison sentence, well within the statutory maximum of imprisonment for five years, a fine of $10,000, or both, but apparently more severe than the sanctions generally imposed in most recent Massachusetts draft cases.[3]
 
 
 8
 We are not oblivious to the serious attention being devoted to many aspects of the sentencing process, including sentence review. See, e. g., American Bar Association Project on Standards for Criminal Justice, Appellate Review of Sentences (Approved Draft, 1968); Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. II, pp. 1334-1335 (1970). And, even in the absence of legislation or broadly accepted policy, we have set aside sentences when impropriety has clearly appeared, Marano v. United States, 374 F.2d 583 (1st Cir. 1967). United States v. Picard, 464 F.2d 215 (1st Cir. 1972), as have other appellate courts, Yates v. United States, 356 U.S. 363, 366-367, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958), United States v. Wiley, 278 F.2d 500 (7th Cir. 1960), Scott v. United States, 135 U.S.App.D.C. 377, 419 F. 2d 264, 266-267 (1969), and United States v. Daniels, 446 F.2d 967 (6th Cir. 1971). In such cases, however, there was a positive showing that either improper factors were considered or proper ones were not, establishing the lack of the individualized sentence approach endorsed in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), United States v. McKinney, 466 F.2d 1403 (6th Cir. June 15, 1972). The case at bar presents a less clear situation: the sentence, in absolute terms, is not a long one and deterrence is not an improper consideration in many cases. We do not feel justified in mandating that it be set aside.[4]
 
 
 9
 We nevertheless confess to a sense of uneasiness, in view of the single conclusory reason advanced to justify a sentence which, in the context of selective service sanctions currently imposed, may be relatively long for a young person who, except for this conviction, is deemed by all a valuable member of his community. Deterrence is, of course, a legitimate concern for both prosecution and the courts. In this case the prosecution did not make it clear how one who gives his name and address to the selective service authorities frustrates these authorities as much as one who, after registering, fails to keep his board informed of changes in his address.[5] Nor did either party make available to the district court, so far as the record discloses, data concerning the sentences meted out in recent periods to other draft offenders or the fact, if it is a fact, that the crime of refusal to register in Massachusetts has been so rare that there has recently been no prosecution through to sentence. We note, finally, the observation of the court in Daniels, speaking of a Jehovah's Witness, who, like appellant, would accept alternative sentence only if so ordered by the court: ". . . under the limited factual circumstances of this case, the issuance of an order probating the Appellant subject to his performance of the identical work demanded of him by the Selective Service is not the kind of sentencing which would induce widespread disobedience of the orders of local Selective Service boards." 446 F.2d at 972.
 
 
 10
 Perhaps reconsideration would produce the same decision but, though unable to do more, we suggest, as did the court in Government of Virgin Islands v. Turner, 409 F.2d 102 (3d Cir. 1968) speaking through Judge Aldrich of this court, that appellant move for a reduction of sentence within the time allowed by Fed.R.Crim.P. 35 so that the district court may have an opportunity to reconsider this matter. See, also, for similar dispositions, United States v. Daniels, 429 F.2d 1273 (6th Cir. 1970) and United States v. Adams, 449 F.2d 122 (5th Cir. 1971).
 
 
 11
 Affirmed.
 
 
 
 [1]
 "If the registrant refuses to cooperate or is inclined to evade, refuses to answer, or answers falsely, his attention should be called to the penal provisions . . . of the Military Selective Service Act of 1967. If he is still refractory, witnesses should be called and, after the penalty of the law has been explained again to him in the presence and hearing of witnesses, a full opportunity should be given him to reconsider his actions and answer the questions. If he is still refractory, his name and the names of the witnesses should be noted and the case immediately reported to the United States district attorney. The registration should not be obstructed or delayed. Persons attempting to obstruct or delay it should be dealt with promptly and firmly."
 
 
 [2]
 The method contemplates the assembling of a group of prospective inductees, informing them of the imminence of induction and of the significance of the step forward, the removal of those who refuse, informing such persons of the criminal sanctions, calling on them again to step forward, and finally, requesting the recalcitrant registrants to sign a statement of refusal before two witnesses. Chernekoff, supra, 219 F.2d at 724 n. 12. (Predecessor and similar regulation.)
 
 
 [3]
 Appellant presented to the district court only some national statistics, showing the increasing and frequent recourse to probation. He now represents to us that, of twenty-three selective service defendants sentenced in the District of Massachusetts in the past two years, thirteen received probation, one received a fine and probation, two received sentences of a year or less, five received two-year sentences, and two received three-year sentences. Most of the offenses involved failure to perform alternative service (7) and failure to report for and/or submit to induction (14). None involved a failure to register. See also SSLR 6001, 6003, 6019
 
 
 [4]
 Appellant also relies on 18 U.S.C. Sec. 5010(d), which requires a sentence treatment under the supervision of the Attorney General, unless "the court shall find that the youth offender will not derive benefit from treatment". But "treatment" is elsewhere defined as "corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies of youth offenders", 18 U.S.C. Sec. 5006. It does not seem applicable to this appellant, who all agree has no antisocial tendency. Such a reading, however, can result in the anomaly that an antisocial youth who refuses to register would avoid prison while a thoroughgoing pacifist like appellant might not. The existence of this treatment commitment provision for the antisocial, and of a probation provision in Sec. 5010(a) for all youth offenders, and the fact that Congress has not required a minimum mandatory sentence for violation of 50 U.S.C.App. Sec. 462 are factors to be borne in mind by a sentencing court
 
 
 [5]
 Appellant, had his principles allowed him to register, would in all probability have been classified a conscientious objector and assigned alternative service, if, indeed, despite his high lottery number, he would have been called at all