UNITED STATES of America,
Plaintiff-Appellee,

v.

Eugene HARRIS, Defendant-Appellant.

No. 76–1745.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1977.

Decided July 1, 1977.

Carolyn Jaffe, Chicago, Ill., for defendant-appellant.

Richard L. Kieser, U.S. Atty., Frank J. Gray, Asst. U.S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

**368**

Before SWYGERT and SPRECHER, Circuit Judges, and HOLDER, District Judge.*

SPRECHER, Circuit Judge.

Following a jury trial, defendant was found guilty of wilfully and by means of threats endeavoring to influence, intimidate and impede a witness in the discharge of her duty in a pending criminal case in violation of 18 U.S.C. § 1503. He was subsequently sentenced to the maximum term of five years imprisonment. On appeal, defendant challenges both his conviction and his sentence.

I

■ Defendant first contends that he was not subject to prosecution under 18 U.S.C. § 1503[1] because the conduct alleged in the indictment occurred in the presence of the court and, therefore, was punishable, if at all, only as contempt of court under 18 U.S.C. § 401(1).[2] We disagree.

The government is generally entitled to proceed under either of two applicable criminal statutes. *United States v. Ruggiero*, 472 F.2d 599, 606 (2d Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973); *United States v. Zouras*, 497 F.2d 1115, 1121 n. 16 (7th Cir. 1974). And this rule has been applied in the present context. As the Supreme Court noted in *Savin, Petitioner*, 131 U.S. 267, 275, 9 S.Ct. 699, 701, 33 L.Ed. 150 (1889):

> It is contended that the substance of the charge against the appellant . . is embraced by § 5399 [the predecessor of § 1503], and, it is argued, is punishable only by indictment. Undoubtedly the offence charged is embraced by that section, and is punishable by indictment. But the statute does not make that mode exclusive, if the offence is committed un-

der such circumstances as to bring it within the power of the court under § 725 [the predecessor of § 401(1)] . . . . .

Thus, there is ample authority to support the conclusion that misbehavior falling within the literal ambit of both sections is punishable under either. *See also Nye v. United States*, 313 U.S. 33, 49, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); *Pettibone v. United States*, 148 U.S. 197, 206, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *Sharon v. Hill*, 24 F. 726 (C.C.Cal.1885); *United States v. Walasek*, 527 F.2d 676, 680 (3d Cir. 1975).

In support of his claim that the coverage of the two provisions cannot overlap, defendant cites *United States v. Essex*, 407 F.2d 214 (6th Cir. 1969). *Essex* correctly states that section 401(1) was originally enacted to restrict the summary contempt power of the federal courts. This was accomplished by limiting the covered conduct to that which occurs within the physical vicinity of the court. *Nye, supra*, 313 U.S. at 48–49, 61 S.Ct. 810. Congress contemplated that misbehavior not subject to the summary contempt power could still be reached by indictment under another criminal statute such as Section 1503. *Id.* at 52, 61 S.Ct. 810. However, there is nothing in the legislative history discussed in *Essex* which indicates a congressional intent *to prohibit* proceeding by indictment where exercise of the summary contempt power would be permissible. Indeed, such a prohibition would be inconsistent with the purpose of Section 401(1), *i. e.*, to restrict, not expand, the exercise of the summary contempt jurisdiction. As the Third Circuit recently stated:

> In view of the historical background set forth in *Essex*, the possibility that the conduct which . . . [defendant] was

---

* District Judge Cale J. Holder of the United States District Court for the Southern District of Indiana is sitting by designation.

1. Section 1503 provides: "Whoever . . . by threats or . . . by any threatening . . . communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . ., in the discharge of his duty . . . ., shall be fined

not more than $5,000 or imprisoned not more than five years, or both."

2. Section 401(1) provides: "A court of the United States shall have power to punish . . such contempt of its authority . . . as . . . [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice."

found to have engaged in might be covered by § 401 . . . does not suggest that the conduct should *not* be found to be within § 1503. Of course, there are many instances in which a single course of conduct may violate more than one statute.

*Walasek, supra,* 527 F.2d at 680 (emphasis in original).

## II

Defendant next contends that the evidence adduced at trial was insufficient to support his conviction under Section 1503. The word "endeavor" in Section 1503 [3] "describes any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent." *United States v. Russell,* 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). The endeavor need not be successful, but it must have at least a reasonable tendency to impede the witness in the discharge of her duties. *United States v. DeStefano,* 476 F.2d 324, 330 (7th Cir. 1973); *United States v. Jackson,* 168 U.S. App.D.C. 198, 513 F.2d 456, 460 (1975); *United States v. Roe,* 529 F.2d 629, 632 (4th Cir. 1975). Also, while it is necessary to establish that the charged conduct was intended to impede the witness, "[i]ntent may, and generally must, be proved circumstantially; normally, the natural probable consequences of an act may satisfactorily evidence the state of mind accompanying it, even when a particular mental attitude is a crucial element of the offense. We perceive nothing that would divert cases of the instant type from this branch of legal doctrine." *Jackson, supra,* 513 F.2d at 461 (footnotes omitted).

With these principles in mind, the case against defendant may be briefly summarized. On June 21, 1974, Jevita Hobbs was testifying as a witness for the government in *United States v. Garland Jeffers, et al.,* 520 F.2d 1256 (7th Cir.) involving an alleged conspiracy to distribute heroin. On the same date, defendant, accompanied by his sister, attended the *Jeffers* trial. Ms. Hobbs had at one time been married to one of the *Jeffers* defendants and she possessed personal knowledge of the other defendants and their activities. She also knew defendant's sister to be the girlfriend of Garland Jeffers, and she had met defendant on several occasions at the apartment where defendant's sister and Jeffers were living. Ms. Hobbs had also known defendant to associate with Nathaniel Jeffers, who was also a defendant in the *Jeffers* case.[4]

Ms. Hobbs testified in the case at bar that, after referring to defendant several times during her *Jeffers* testimony and while answering a question later during the same testimony, she observed defendant "standing up and shaking his fist" and heard him say "you better not." Ms. Hobbs interpreted defendant's actions and words as a threat calculated to impede her continued testimony. She further testified that a recess was called at this point and she was taken from the courtroom to pull herself together because, in her words, "I wasn't going to finish testifying." After being

---

**3.** See note 1 *supra.*

**4.** Defendant contends that the jury's exposure to testimony suggesting that defendant was a member of an organization called the "Family" requires reversal of his conviction. We disagree. Assuming *arguendo* such testimony was not admissible, the trial judge sustained defense counsel's objection to this area of inquiry, and any possibility of prejudice which may have existed was negated by the trial judge's direction to the jury to disregard any testimony suggesting defendant's membership in the so-called "Family."

Apparently defendant also complains of the jury's exposure to evidence connecting defendant to the individual *Jeffers* defendants. This circumstantial evidence was clearly admissible.

In fact, such evidence will generally be critical in a Section 1503 prosecution. For, absent some connection between defendant and the *Jeffers* trial, there would have been little basis for an inference that defendant's actions had a reasonable tendency to intimidate Ms. Hobbs in the discharge of her duty as a witness; the intimidation arose from her knowledge that defendant was connected with those she was in the process of testifying against. Similarly, if the government had failed to establish a connection between defendant and the *Jeffers* defendants, there would have been little foundation for an inference that defendant's actions were calculated to impede Ms. Hobbs' testimony against those defendants.

assured of her safety while in the courtroom, she returned to the stand and completed her testimony.

A Special Agent with the Drug Enforcement Administration then testified that defendant, while standing facing the witness stand, shook his fist and head in a negative direction. The agent further testified that defendant appeared to be speaking, but the agent did not hear what was said. A Deputy United States Marshall then testified along similar lines and added that defendant's actions continued for approximately thirty seconds.

The final witness for the government was the judge who presided at the *Jeffers* trial. He stated:

> I noticed that the testimony of Miss Hobbs was coming out very slowly. Her answers were, there were long pauses between the questions and the answers. I noticed that she was looking in the back of the courtroom and at approximately that same time I saw Mr. Harris stand up in the back of the courtroom and for an instant I observed him shake his fist and move his lips facing in the direction of the witness stand.

The judge also testified that Ms. Hobbs was "fairly well shaken" by the incident.

■ While the evidence is not overwhelming, when viewed in the light most favorable to the government, we are satisfied that it is sufficient for the jury to have inferred defendant's guilt beyond a reasonable doubt of endeavoring to impede Ms. Hobbs' testimony in the *Jeffers* case. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

### III

■ Defendant also claims that he was deprived of effective assistance of counsel in violation of the Sixth Amendment. In *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir. 1975), this court articulated the standards governing whether a defendant has been afforded constitutionally adequate assistance of counsel:

> [This determination] goes beyond an inquiry as to whether the . . . trial was a sham or mockery. But . . . [it does not go] to the point . . . of declaring that there is at least a presumption of failure to meet the constitutional guarantee of assistance of counsel merely because defendant's attorney . . . makes egregious errors, tactical or strategic, in preparation, in conference, in examining witnesses, or in not investigating or calling potential witnesses. . . . The criminal defendant . . . has the constitutional right to an advocate whose performance meets a minimum professional standard.

*Id.* at 640.

We are convinced that defendant has failed to meet his burden of showing the representation he received fell short of the *Twomey* standard. *Matthews v. United States,* 518 F.2d 1245, 1246 (7th Cir. 1975). To support his claim, defendant places considerable reliance upon trial counsel's alleged failure to call available occurrence witnesses on defendant's behalf. However, there is no support in the record for defendant's speculative belief that there existed courtroom observers, other than those in fact called by defense counsel, who, if called, would have testified to facts beneficial to defendant's case. Nor is there any basis for defendant's assertion that trial counsel failed to even investigate the possible existence of such witnesses. And defendant's claim that trial counsel failed to utilize available material which was critical to effective impeachment of Ms. Hobbs' testimony in the case at bar is also without foundation in the record.

■ The final ground urged in support of defendant's incompetency of counsel claim relates to trial counsel's cross-examination of the judge who presided at the *Jeffers* case. In response to questions concerning defendant's emotional appearance during the courtroom incident, the judge replied that "there was a certain intensity about his appearance" and that "[i]t left the impression with me that he knew exactly what he was doing." Defendant argues that the questions eliciting these responses

evidence defense counsel's inadequacy. Defendant, however, overlooks the fact that this line of questioning was successfully employed with the previous witness, who testified that defendant had only "a general expression on his face" during the incident. The Sixth Amendment does not require perfect representation and we will not substitute our judgment "for counsel's practical decisions in the hustings," *United States v. Robinson,* 502 F.2d 894, 896 (7th Cir. 1974), simply because hindsight might suggest that it was a mistake to repeat a previously successful cross-examination tactic.[5]

## IV

Defendant was sentenced to imprisonment for a period of five years, which is the maximum term authorized by Section 1503. He contends that even if his conviction is allowed to stand his sentence should be vacated and the case remanded for resentencing.[6] He argues that, in light of the absence of aggravating circumstances and the favorable background evaluation made by the probation officer who handled the investigation and prepared the presentence report,[7] the sentence imposed was excessive and the trial judge must have relied upon the erroneous and extremely prejudicial hearsay-on-hearsay allegations added to the presentence report by a probation officer who was not involved in the presentence investigation.[8]

---

5. We also reject defendant's related contention that the *response* of the *Jeffers* trial judge mandates reversal of his conviction. In the first place, we are not convinced that the testimony was improper. The judge was simply stating his perception that defendant's actions had a purposeful, not inadvertent, quality or intensity to them. This was the kind of answer which trial counsel's question seemed calculated to elicit even though, as noted above, it was not the favorable response defense counsel had hoped to elicit from the witness. *See also* Rules 701 & 704 of the Federal Rules of Evidence. However, even assuming the testimony was improper, we believe there was sufficient other evidence from which the jury could have inferred that defendant's actions were intended to impede Ms. Hobbs in the discharge of her duties as a witness.

6. The presentence report correctly states that defendant had at one time been charged with armed robbery, that the charge was subsequently reduced to theft, and that defendant was given a period of supervision. Defendant speculates that the severity of his sentence might be due to a misunderstanding by the trial judge of the meaning of "supervision" under Illinois law. This hypothesis has absolutely no support in the record, and we reject it as frivolous.

7. The Evaluative Summary of the investigating officer provided:

Eugene Harris is a 22-year-old, Black American who was convicted by a jury of Intimidation of a Government Witness.

His prior record consists of an armed robbery charge reduced to theft, for which he received a year's supervision; an unlawful use of weapon charge which was dismissed; and two assault charges which were dismissed. He is the product of a broken home, but has maintained a close relationship with both parents. His parents indicated that he was involved in a few fights when he was growing up. However, in the neighborhood in which he grew up, fighting was probably necessary for survival.

He earned a GED while in the Job Corps and has taken a few college courses. He hopes to earn a college degree.

His work record has been very good for the past two years. He holds two jobs with the same company and is considered by them a very good employee.

He has continued to deny his guilt. He was cooperative with the probation officer.

8. The additional statements included by the non-investigating officer were:

The Presentence Report was prepared by the Chicago, Illinois U.S. Probation Office. Mr. Francis J. Maloney, U.S. Probation Officer, handled the investigation.

On 6/3/76, this officer spoke to Mr. George R. McDougall, Special Agent for the United States Drug Enforcement Administration at the Hammond, Indiana Office. Mr. McDougall stated that the defendant became actively involved in the FAMILY's operations after Garland Jeffers was arrested in March 1974. He further stated that between March 1974 and September 1974 the defendant transported and concealed heroin across state lines and collected money for the FAMILY's drug operations. Mr. McDougall stated that other FAMILY Members told him of the defendant's involvement and he feels certain that their information is reliable.

The defendant's involvement resulted in his indictment for conspiracy to distribute heroin and cocaine. These charges were later dropped and the defendant was indicted for Intimidation of a Government Witness.

I feel that the offense of Intimidation of a Government Witness threatens the fiber of

■ The Supreme Court has consistently adopted the position that the courts of appeals have no authority to review the duration or severity of a sentence which is within the range set by statute. In *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the Court stated:

> We would make clear that we are not . . . [vacating the sentence] because of petitioner's allegation that his sentence was unduly severe. The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction . . . ..

*Id.* at 741, 68 S.Ct. at 1255. The Court recently restated this position in *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974):

> "If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute."

*Id.* at 440–41, 94 S.Ct. at 3051 (citation omitted).[9] Hence, even though we think the evidence supporting defendant's conviction, while legally sufficient, was less than overwhelming and despite our belief that defendant's courtroom behavior, while deplorable, was not such as to warrant imposition of the maximum sentence, we are unable to vacate defendant's sentence simply because we deem it excessive.

This conclusion, however, does not dispose of defendant's claim. As the Court in *Dorszynski* stated:

> our criminal justice system. The defendant's involvement in organized illegal drug operations further accentuates the seriousness of the offense. I, therefore, recommend that the defendant receive the maximum sentence allowable under law.

**9.** The *Dorszynski* Court further stated that "[t]he statutes referred to in [the] line of cases [in which this principle was developed] established a permissible range within which sentences could be imposed; if a judge imposed a sentence within that range, his exercise of discretion as to where within the permissible range sentence should be fixed was not subject to challenge." 418 U.S. at 441, 94 S.Ct. at 3051. The Court's statement seems directly applicable to the case at bar.

"Appellate modification of a statutorily-authorized sentence . . . is an entirely different matter than the careful scrutiny of the *judicial process* by which the particular punishment was determined. Rather than an unjustified incursion into the province of the sentencing judge, this latter responsibility is, on the contrary, a necessary incident of what has always been appropriate appellate review of criminal cases."

418 U.S. at 443, 94 S.Ct. at 3053 (emphasis in original; citation omitted). Hence, the process by which the trial judge determined the sentence in the case at bar is not insulated from appellate review. *See United States v. Hartford,* 489 F.2d 652 (5th Cir. 1974); *United States v. Daniels,* 446 F.2d 967 (6th Cir. 1971).

■ In determining an appropriate punishment, all the circumstances of the particular crime and the background of the individual offender must be considered.[10] This individualized sentencing process requires "possession of the fullest information possible concerning the defendant's life and characteristics," *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949), and that information is not limited to what is admissible at trial. *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. New York, supra,* 337 U.S. at 247, 69 S.Ct. 1079.[11] Accordingly, it is now beyond dispute that reliance upon hearsay in assessing punishment is not *per se* improper:

**10.** The failure to exercise individualized discretion has been held ground for vacation of the sentence imposed. *Dorszynski, supra; Hartford, supra; Daniels, supra; United States v. Bowser,* 497 F.2d 1017 (4th Cir.), *cert. denied,* 423 U.S. 997, 96 S.Ct. 427, 46 L.Ed.2d 372 (1974); *Woosley v. United States,* 478 F.2d 139 (8th Cir. 1973); *United States v. Wilson,* 450 F.2d 495 (4th Cir. 1971).

**11.** *See also United States v. Sweig,* 454 F.2d 181, 183–84 (2d Cir. 1972); *United States v. Schipani,* 435 F.2d 26, 27 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971); *United States v. Johnson,* 507 F.2d 826 (7th Cir. 1974).

[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.

*Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959); *Williams v. New York, supra.*[12] However, the Supreme Court has never suggested that consideration of hearsay is always proper. In *Williams v. New York,* the narrow issue was whether reliance on hearsay in determining an appropriate sentence was *ever* permissible and the Court specifically noted that the accuracy of the hearsay information relied on by the sentencing judge in that case "were not challenged by appellant or his counsel, nor was the judge asked to disregard any of them or to afford appellant a chance to refute or discredit any of them by cross-examination or otherwise." 337 U.S. at 244, 69 S.Ct. at 1081.[13] It is necessary, therefore, to determine what, if any, safeguards exist on the consideration of hearsay information in the sentencing process.[14]

In *Townsend v. Burke, supra,* the Supreme Court held that it violated due process to sentence a defendant "on the basis of assumptions concerning his criminal record which were materially untrue." 337 U.S. at 741, 68 S.Ct. at 1255. The Court noted that the defendant, being unrepresented by counsel, had no opportunity to correct the false foundation upon which his sentence was premised. *Id.* Similarly, in *United States v. Tucker, supra,* the Court set aside a sentence because it was based, at least in part, upon prior convictions which were subsequently held constitutionally invalid because obtained while defendant was not represented by counsel. *Tucker* and *Townsend* have been read broadly to preclude reliance upon "improper or inaccurate information" in making the sentencing determination. *Dorszynski, supra,* 418 U.S. at 431 n. 7, 443, 94 S.Ct. 3042; *McGee v. United States,* 462 F.2d 243, 245 n. 2 (2d Cir. 1972); *United States v. Espinoza,* 481 F.2d 553, 555 (5th Cir. 1973).[15]

The *Townsend-Tucker* principle, however, is to some extent inconsistent with the principle of *Williams v. New York* and its progeny. The former reflects the Court's belief that a defendant should not be sentenced on invalid premises. The latter, *i. e.,* that consideration of hearsay information regarding defendant's life and characteristics is generally permissible, reflects the Court's concern that the trial judge exercise his individualized sentencing discretion in an informed manner. While both principles are premised on a concern that the sentencing process be objective and fair to the individ-

---

**12.** *See also Schipani, supra; United States v. Chewning,* 458 F.2d 381 (9th Cir. 1972); *United States v. Collins,* 432 F.2d 1136, 1140 (7th Cir. 1970), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971).

**13.** Similarly, the petitioner in *Williams v. Oklahoma, supra,* challenged the use of hearsay statements in the imposition of his sentence even though he admitted the accuracy of those statements.

**14.** Since the inclusion of hearsay statements in the material furnished to the sentencing judge is, as noted above, not *per se* improper, several cases have not had to reach this issue because the sentencing judge expressly disclaimed any reliance on the hearsay statements in imposing

sentence. *See, e. g., United States v. Yates,* 554 F.2d 342 (7th Cir. 1977); *United States v. Allen,* 494 F.2d 1216 (3d Cir. 1974). There is nothing in the record before us, however, which indicates that the sentencing judge did *not* rely on the challenged hearsay allegations.

**15.** As the court in *Espinoza* stated:

Implicit in the Court's holding in *Tucker* is the principle that despite the broad discretion left to the trial judge in assessing background information for sentencing purposes, see *Williams v. New York . . . .,* a defendant retains the right not to be sentenced on the basis of invalid premises.
481 F.2d at 555.

ual defendant,[16] the policies underlying *Williams* cannot be inflexibly advanced without undermining the policies underlying *Townsend* and *Tucker*, since hearsay allegations, by their very nature, are prone to error or inaccuracy. Hence the courts of appeals have found it necessary to strike a balance between the two principles in order to give adequate recognition to both.

In striking this balance, the courts have held that a defendant is entitled to some protection against the danger of reliance on erroneous hearsay allegations in the assessment of punishment. Specifically, it has been held that where the sentencing judge relies upon prejudicial hearsay information, the accuracy of which is contested,[17] "fundamental fairness requires that a defendant be given at least some opportunity to rebut that information." *United States v. Espinoza, supra,* 481 F.2d at 556. In applying this principle to the case at bar, we are confronted with several problems.

First, the cases frequently state that this rule only applies where the sentencing judge has *explicitly relied* on prejudicial hearsay information regarding the offender's background. *See, e. g., United States v. Walker,* 469 F.2d 1377, 1380 (1st Cir. 1972); *United States v. Espinoza, supra,* 481 F.2d at 556. And the court below did not state the factors it considered in imposing the maximum sentence upon defendant. However, several considerations persuade us that the lack of explicit reliance in this case is not dispositive of defendant's claim.

The vindication of a defendant's right to not be sentenced on the basis of improper factors or erroneous information—a right recognized by the Court in *Townsend* and *Tucker*—should not depend upon the fortuity of the sentencing judge disclosing, perhaps inadvertently, the factors relied upon in the imposition of sentence. The fairness of the sentencing process is undermined by reliance upon inaccurate information, not by the sentencing judge stating that he relied upon material which proves to be inaccurate. In addition, the explicit reliance requirement simply encourages judges not to disclose the factors considered in imposing sentence. While it is true that a trial judge is generally not obligated to give reasons for the imposition of a particular sentence, it is sometimes necessary, and always advisable, to do so. *See, e. g., McGee v. United States,* 462 F.2d 243, 247 (2d Cir. 1972); *United States v. Carden,* 428 F.2d 1116, 1118 (8th Cir. 1970). Accordingly, we should not adopt a rule which will have the natural and probable effects of encouraging trial judges to avoid

---

**16.** This is obviously true of the *Townsend-Tucker* principle. And the Court in *Williams* made clear that permitting consideration of hearsay in the sentencing determination has a similar objective:

Modern changes in the treatment of offenders make it more necessary now than a century ago for observance of the distinctions in the evidential procedure in the trial and sentencing processes. . . . In general, these modern changes have not resulted in making the lot of offenders harder. On the contrary a strong motivating force for the changes has been the belief that by careful study of the lives and personalities of convicted offenders many could be less severely punished and restored sooner to complete freedom and useful citizenship. . . .

Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies. . . . We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination.

337 U.S. at 249–50, 69 S.Ct. at 1085.

**17.** As is recalled, the Court's *Williams* decisions did not reach this issue since the accuracy of the hearsay statements relied on by the sentencing judges in those cases was conceded by the defendants. *See* note 13 and accompanying text *supra.*

giving reasons for sentencing decisions and diminishing the individual offender's confidence in the fairness and objectivity of a critical step in the criminal justice process.

 Moreover, a showing of explicit reliance on improper factors or erroneous information has not invariably been held a prerequisite to sentence relied under *Townsend* and *Tucker.* For example in *McGee, supra,* it was not possible to determine whether the sentence imposed was affected by consideration of unlawful convictions.[18] The Second Circuit, in an opinion by Judge Friendly, concluded that it was not necessary to show explicit reliance to obtain relief. It was sufficient to show that it was not improbable the trial judge was influenced by improper factors in imposing sentence. We think this test is met here. The evidence supporting the conviction was not overwhelming. The conduct for which defendant was convicted was not accompanied by aggravating circumstances.[19] And, most important, there was a distinct disparity in the presentence report between the evaluative summary of defendant's life and background prepared by the probation officer who handled the presentence investigation[20] and the hearsay-on-hearsay allegations added to the report by an officer who was not involved in the background investigation.[21] Under these circumstances, it is not unreasonable to conclude that the court below, in imposing the maximum sentence, may have been influenced by the hearsay allegations in the presentence re-

port. Accordingly, defendant's claim is not defeated simply because the sentencing judge elected not to articulate the factors considered in imposing sentence.

 A second obstacle to reconsideration of defendant's sentence is the fact that the hearsay material in the presentence report was not challenged as inaccurate until this appeal. It is settled that relief is unavailable where the accuracy of the information considered by the sentencing judge is conceded. *Williams v. New York, supra; Williams v. Oklahoma, supra.* There is no contention here that the sentencing judge refused to disclose that portion of the presentence report containing the challenged hearsay statements, and yet neither defendant nor his trial counsel challenged the accuracy of the prejudicial allegations during the sentencing hearing. As a general rule, we would agree that sentence relief should be foreclosed where a defendant, who is not denied access to the presentence report, "has not directly and specifically denied the truth of hearsay information" and the only denial of record is that of counsel on appeal. *See United States v. Trevino,* 490 F.2d 95, 96 (5th Cir. 1973).

 Nevertheless, several considerations persuade us that, under the circumstances of this case, justice would not be disserved if defendant is simply afforded the opportunity to deny and rebut the allegations of serious criminal misconduct in the presentence report.

---

18. The sentencing judge simply stated that "[t]he judgment of the Court is that you be placed in the custody of the Attorney General for a period of two years on each of the four counts of which you have been convicted, and each sentence to run concurrently one with each other."

19. Of course, if the court below had considered *any* violation of Section 1503 to be so reprehensible that even absent the existence of aggravating circumstances the imposition of the maximum sentence was required, the sentence would have to be vacated. In exercising its sentencing discretion in light of the circumstances of the particular crime and the background of the individual defendant, the trial court is required to select an appropriate sentence within the range provided by statute.

Where the judge selects the maximum sentence solely because defendant has been convicted of violating the statute, he has failed to exercise the discretion vested in him and the sentence must be set aside. *United States v. Daniels, supra,* 446 F.2d at 971; *United States v. Hartford, supra,* 489 F.2d at 655–56. Since we will not presume that the court below engaged in such mechanical sentencing, the absence of aggravating circumstances in the case at bar supports the inference that the court may have been influenced by the hearsay allegations when it imposed the maximum sentence.

20. See note 7 *supra.*

21. See note 8 *supra.*

First, defendant contends that his trial counsel apparently neglected to examine the presentence report prior to the sentencing hearing. While this contention has no factual support in the record, it is logically compelling. It seems incredible to us that, if defendant or his counsel had in fact seen the extremely prejudicial hearsay remarks prior to the sentencing hearing, there would have been no effort to challenge their accuracy.[22]

Second, there is a marked disparity in the presentence report between the background evaluation prepared by the investigating probation officer and the hearsay allegations appended to the report by a non-investigating officer. On the one hand, the investigating officer found that defendant held down two jobs with the same company and that the Chairman of the Board and Comptroller of the company considered defendant a very good employee. On the other hand, the appended hearsay information alleges that defendant was heavily involved in illicit drug trafficking.

Finally, the hearsay-on-hearsay statements, which charge defendant with criminal misconduct far more serious than that for which he was convicted, possess not indicia of reliability. The only basis for the charges is a statement by a Federal agent that he was told by unnamed members of the so-called Family that defendant was involved in that group's drug operations.

In a situation similar to this the Ninth Circuit stated:

> Here the other criminal conduct charged was very serious, and the factual basis for believing the charge was almost nil. It rested upon only two things: the opinion of unidentified personnel in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some information lending partial support to the charge.
>
> \* \* \* \* \* \*
>
> [A] sentence cannot be predicated on information of so little value as that here

involved. A rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process.

\* \* \* \* \* \*

On resentencing, the District Court may not rely upon the information contained in the presentence report unless it is amplified by information such as to be persuasive of the validity of the charge there made.

*United States v. Weston,* 448 F.2d 626, 633, 634 (1971). In *Weston,* however, the accuracy of the hearsay accusations was fully contested prior to imposition of sentence. The court, therefore, had to determine whether it had the authority to decide that some hearsay material was so unreliable it could not be considered in imposing sentence even if defendant was afforded an opportunity to rebut the allegations. In contrast, the sentencing judge in the case at bar had no reason to question the truth of the hearsay accusations, or to require the government to submit additional material in support of them, since neither defendant nor his counsel contested their accuracy prior to sentencing. The court below could hardly be faulted if in fact it considered the hearsay allegations contained in the presentence report. For, even though they seem devoid of informational value, it must have appeared to the court that defendant was conceding their accuracy. *See Williams v. New York, supra.*

However, if defendant had contested their accuracy prior to sentencing and the government failed to supply any additional material to corroborate them, the court might have concluded that the charges of other criminal misconduct in the presentence report were too unreliable to be considered in the imposition of sentence.

---

**22.** As noted earlier in this opinion, our review of the record convinces us that defendant was afforded constitutionally adequate assistance of counsel during the trial which resulted in his conviction. That trial counsel *may* have been derelict in not reading the presentence report prior to the imposition of sentence does not affect our conclusion with respect to the adequacy of defendant's trial representation.

Here, unlike in *Weston,* the sentencing judge has never had an opportunity to make this assessment. Therefore, we vacate the sentence and remand to the district court for resentencing after affording defendant adequate opportunity to contest the accuracy of the serious charges contained in the presentence report. While the sentencing judge is free to reimpose the original sentence upon reconsideration, we are confident that he will give careful consideration to defendant's claim for sentence relief.[23]

Accordingly, the judgment of conviction is affirmed, but the sentence vacated and the case remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REMANDED IN PART.

HOLDER, District Judge, concurring in part and dissenting in part.

I concur in the results reached in that part of the Court's decision which affirms the appellant's conviction in the District Court, but I respectfully dissent from that part of the decision wherein the Court vacates the sentence imposed on appellant and remands the case for resentencing.

The appellant contends that in fixing his sentence the District Court improperly relied on hearsay statements in the presentence report concerning misconduct by the appellant, which statements the appellant had no opportunity to challenge. The Court here decides that "justice would not be disserved if defendant is simply afforded the opportunity to deny and rebut the allegations of serious criminal misconduct in the presentence report" and remands the case to the District Court for resentencing. Because the record shows that appellant has had ample opportunity to challenge

those statements, the truth of which at no time has he denied on the record, I dissent from that part of the Court's decision.

Reliance upon hearsay in assessing punishment is not *per se* improper, *Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Indeed, because modern concepts of individualized sentencing require that the sentencing judge have before him and consider complete information regarding the offense, the defendant, his life, his past, and his characteristics, *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), it is imperative that the sentencing judge consider hearsay lest the sentencing hearing become an endless parade of witnesses testifying as to every trait of the defendant, as well as his personal history, his involvement in the offense of which he has been convicted, his past record, and every other conceivable aspect of his life. As long as the defendant is afforded the opportunity to challenge and rebut the hearsay and thereby, if the hearsay is denied, require the government to prove the challenged hearsay, any danger of the Court's relying on untrue hearsay representations is avoided. Therefore, assuming, as it appears on this record we must, that the sentencing judge did rely at least in part on the hearsay allegations in the presentence report, in doing so he committed no error if appellant was given the opportunity to challenge those allegations. The reliability of the hearsay here was enhanced by the presentence report citing the source, an investigating agent of the United States of America.

Appellant makes no allegation that either he or his counsel was denied access to the presentence report, or to that part of that report containing the allegations here at issue. Appellant makes no allegation that either he or his counsel was denied by the

---

**23.** Defendant also contends that he is entitled to sentence credit for time spent in custody for inability to make bond upon an earlier indictment based on the same facts which gave rise to the instant conviction. He has supplemented the record on appeal with documentation establishing that credit has not been given. However, the question of whether defendant is entitled to sentence credit for time spent in custody pursuant to the earlier indictment should be decided in the first instance by the district court. The court should determine whether the factual predicate of the earlier indictment was indeed identical to that upon which the instant conviction is based and, if so, whether this entitles defendant to credit against the sentence to be imposed upon remand.

sentencing judge the opportunity to speak freely or present any evidence at the sentencing hearing. In this sense, then, appellant clearly had the opportunity to challenge those allegations had he or his counsel chosen to do so. An opportunity to challenge is no less an opportunity merely because it is, by choice, unexercised.

Appellant contends that he was not given effective opportunity to challenge because his counsel "apparently" failed to examine the presentence report prior to the sentencing hearing. But, appellant has produced absolutely no factual support for this contention. Appellant seems to concede this lack of factual support by asserting that his counsel "apparently" failed to read the presentence report rather than asserting that his counsel did "in fact" fail to read the presentence report. Appellant produced no affidavit from his trial counsel as to whether or not he read the presentence report prior to the sentencing hearing.

Instead, appellant invites us to speculate that his counsel, who we already have found to have been competent, failed to read the presentence report prior to the sentencing hearing on the basis of counsel's failure to object to the allegations at the sentencing hearing. In support of this position, appellant asserts that the allegations, if considered by the Court, were so damaging to his position that had counsel read and been aware of them, he surely would have objected to the Court's consideration of them. Concededly, the allegations are damaging to appellant's position. Nonetheless, counsel's failure to object to them is as easily reconcilable with a desire not to emphasize them if he felt they could be proven as it is with the theory that he failed to read them. Appellant also suggests that the hearsay allegations are in such conflict with other information in the presentence report that had counsel read the report, he surely would have challenged the truth of the allegations here in question. However, I am able to detect no conflict whatsoever in the presentence report. The evaluation by the investigating probation officer stated that appellant was considered by his employer to be a good employee and dealt with his activities at his job. The statement appended to the report in no way dealt with appellant's employment, but rather it suggested his involvement in illegal drug traffic. Appellant suggests that such assertions are so inherently contradictory that had his counsel read both, he could not possibly have believed the latter. As I find both of these asserted bases to be without foundation, I decline appellant's invitation to speculate that his competent counsel failed to read the presentence report prior to the sentencing hearing.

Additionally, appellant has shown no prejudice by the Court's consideration of these hearsay allegations, and I feel that remand of this case to give appellant another opportunity to challenge these statements will be pointless, in that appellant has at no time, even on this appeal, denied the allegations here at issue. He did not deny them at the sentencing hearing, even though he, as well as his counsel, had access to the report and the opportunity to speak regarding that report. The record reveals no statement by defendant denying the allegations in conjunction with his petition to reduce bond. He has not denied them by any other actions or procedures before the trial judge. No affidavit appears in the record on this appeal denying those allegations. As earlier stated, no contradiction within the presentence report suggests that the statements are not true. Appellant's counsel on appeal suggests in her brief that the Court considered "erroneous and irrelevant" information, but she gives no intimation as to in what respect it was erroneous. Indeed, it is not clear whether by her comments appellant's counsel meant to say that the information itself was erroneous, or that the Court was in error in considering it. Absent such a denial, even if the Court committed error in considering the hearsay, which I am not willing to concede, such error was harmless because appellant has shown no prejudice requiring that his sentence be vacated.

Finally, appellant asserts that the sentencing judge gave great weight to the hearsay allegations in fixing appellant's

sentence. The sentencing judge in this case is an experienced judge who has been on the bench for some fifteen (15) years. He is no doubt familiar with the concept of hearsay evidence and any credibility deficiencies it may suffer vis-a-vis other types of evidence. There has been no showing that he failed to attribute proper weight to that evidence in fixing the sentence. Indeed, his order denying the motion to reduce bond in this case [1] reveals that he was primarily concerned with the appellant's conduct on which the indictment was based, and not with the hearsay statements in the presentence report. There has been no showing that the sentencing judge gave improper weight to the hearsay statements.

Clearly, the remedy of appellant was not by way of appeal requesting that there be a finding that the trial judge erred on the record presented. Appellant should have utilized Rule 35, Federal Rules of Criminal Procedure, to Correct or Reduce the Sentence by direct petition to the trial judge with affirmative representations of the falsity of the hearsay material.

For the foregoing reasons, I would affirm the sentence as well as the conviction in this cause.

---

1. That order, dated September 1, 1976, stated:

 The defendant herein was indicted and convicted after trial by jury of violating Title 18, United States Code Section 1503 (intimidation of Government witness). His conviction is now on appeal to the United States Court of Appeals for the Seventh Circuit. While the defendant was represented in the trial court by counsel and is apparently represented by counsel on appeal, he filed on August 25, 1976 a pro se motion seeking a reduction of his appeal bond. Trial evidence indicated that during the trial of a narcotics conspiracy case before Judge Allen Sharp and a jury in Lafayette, Indiana, the defendant threatened a prosecution witness while the witness was testifying. The threat was so emotionally disturbing to the witness that a recess of some time was required before the trial could resume. The threat occurred in a defiant manner before numerous witnesses in the courtroom, which witnesses included the trial judge. The conduct in which the defendant indulged and his defiant attitude throughout as well as the presentence report indicate that the defendant constitutes a substantial threat to the community. This defendant is no longer presumed to be innocent but has been convicted after a jury trial. He was convicted of openly, arrogantly, and defiantly threatening a prosecution witness in open court. The appeal bond as presently set by this court is the least restrictive condition this court believes appropriate not only to assure his presence after appeal but to protect the public interests.

 Accordingly, the motion to reduce the defendant's appeal bond is denied.