**Richard M. ALLEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**William D. CALDWELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 22179, 22180.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 29, 1969.

Decided Nov. 19, 1969.

Mr. Albert J. Feigen, Washington, D. C. (appointed by this court) for appellants.

Mr. D. William Subin, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, Harvey S. Price and Roger E. Zuckerman, Asst. U. S. Attys., also entered appearances for appellee.

Before McGOWAN, TAMM and LEVENTHAL, Circuit Judges.

PER CURIAM:

Appellants were jointly indicted for assault with intent to kill (22 D.C.Code

§ 501 (1967)) and assault with a dangerous weapon (22 D.C.Code § 502 (1967)) following a brutal attack upon a member of the Metropolitan Police Department who was engaged in "undercover" work during July of 1967. After a jury trial in the district court, appellant Caldwell was found guilty on both counts; appellant Allen was acquitted on the charge of assault with intent to kill, but convicted on the dangerous weapon charge. In this appeal both appellants contend that the trial court erred in denying their motions for acquittal, which were based upon the insufficiency of the prosecution's evidence. We affirm.

■ The standard governing our review of the trial court's decision on the motions to acquit was recently restated by this court in Johnson v. United States, No. 21,851 (D.C.Cir. June 20, 1969; slip op. at 4):

> Before the Appellant can effectively challenge the trial court's decision to send this case to the jury, he must establish that at the point when the motion for acquittal was made the Government had not introduced
>
>> such evidence that reasonable persons *could* find guilt beyond a reasonable doubt. It is not a requirement that the evidence *compel,* but only that it is capable of or sufficient to persuade the jury to reach a verdict of guilty by the requisite standard.
>
> Crawford v. United States, 126 U.S. App.D.C. 156, 158, 375 F.2d 332, 334 (1967) (emphasis in original) * * *.

Appellants' principal arguments concerning the sufficiency of the evidence center around the ability of the victim and chief prosecution witness, Officer Robert A. Catlett, to identify his assailants and to reconstruct the events which transpired in the dimly lit bar where he was attacked. Appellants' emphasis on the dim lighting in the Harvard Grill, the scene of the altercation, is unconvincing. Officer Catlett testified that the lighting in the bar was sufficient and that the assault began and ended in portions of the bar which were more brightly lighted than the remainder (Tr. 58, 83–84, 88–89). This testimony was corroborated by the manager of the Harvard Grill, who was present during the attack on Officer Catlett (Tr. 119–20):

> We have sufficient lighting, we have four lights in the ceiling. There is a 100-watt bulb in all four. We have a neon sign that lights up, we have the juke box, we have six lights in the ceiling * * * in the back bar. Then we have Budweiser signs and food signs that all light up so there is ample amount of light.

We also find little merit in appellants' contentions that Officer Catlett was too dazed by blows received in the early stages of the affray to be able to make a competent identification of his assailants, and that the circumstances indicated by his testimony do not support an inference of intent to commit murder with respect to appellant Caldwell. The substances of Officer Catlett's testimony refutes these contentions (Tr. 50–52):

> * * * I walked into the Harvard Grill, * * * started to leave, and Mr. Caldwell was standing right in front of me and stated did you know me, do you know me.
>
> THE COURT: Stated what?
>
> THE WITNESS: Do you know me. I said yes, I seen you. Then he hit me in the mouth.
>
> *  *  *  *  *  *
>
> About an instant later someone hit me behind the head with some unknown hard object, at which time I took a few steps backwards to get my balance and tried to realize what was going on.
>
> I took my watch off, put it into my pocket. I came charging into him and took one good swing at him, at which time I looked up and there were five or six Negro males standing up around him, grabbing beer bottles off the bar and off the tables surrounding it, of which one was Mr. Caldwell and another was Mr. Allen.

THE COURT: Did each of them have a bottle?

THE WITNESS: Yes, sir.

\* \* \* \* \* \*

They smashed [the beer bottles] against the bar and tables and broke them and proceeded towards me, at which time I tried to get behind the bar, \* \* \* tried to get through the door at the back of the bar, but it opened in the wrong direction. I made an attempt to climb over it, something hit me and I went over on my face behind it.

\* \* \* \* \* \*

I crawled back into the kitchen and got my back up against the refrigerator, and the kitchen filled up with Negro males trying to stab at me, hit at me and kick me, [while] I was laying [sic] on by back, kicking at them trying to keep them away.

For a few seconds this occurred, and then I saw Mr. Caldwell reach down and pick up a large galvanized garbage can \* \* \* and smash it down. The first time I stopped it with my hand, the second time it went through my finger, the edge of the garbage can broke it off.

Q. You are referring to the right index finger?

A. That's correct.

Q. Thank you.

A. I saw him swing [the garbage can] one more time, which hit me in the back of the head, then I don't remember too much \* \* \*.

Officer Catlett was cross-examined extensively regarding the effect of the initial blow to the head (see, e.g., Tr. 66–67, 76–85), and our review of this cross-examination indicates that it did not substantially erode the credibility of his story; certainly there was sufficient evidence on the identification issue to warrant submission to the jury. Similarly, we believe that the testimony of Officer Catlett and other witnesses, if credited by the jury, could support an inference that appellant Caldwell possessed the intent needed to sustain a conviction for assault with intent to kill.[1]

██ Appellant Caldwell also contends that his sentence cannot be sustained because the transcript reveals that the court took account of improper factors at the time of sentencing. This argument is premised on the following exchange which took place during sentencing (Tr. 459–60):

THE COURT: Caldwell, do you have anything to say?

DEFT. CALDWELL: No, sir, Your Honor.

THE COURT: Well, Mr. Addams [counsel for the defendant] \* \* \* you realize that this man only missed being here for murder by an eyelash?

MR. ADDAMS: Yes, Your Honor, I realize that.

THE COURT: \* \* \* I have forgotten all the stitches that were taken and the things that were broken, but it was a really rugged assault \* \* \*.

It is the judgment of this—

MR. ADDAMS: Your Honor, before imposing sentence, Mr. Caldwell indicates he would like to say something.

THE COURT: Oh, yes, anything he wishes to say.

1. In charging the jury on the intent issue, the trial court stated in part (Tr. 388–89):

[T]ake into consideration all of the testimony in the case to arrive at the intent he had in his mind. Intent ordinarily cannot be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But intent may be deduced from circumstances, from things done, things said, and it may be inferred that a person intends the natural and probable consequences of his acts.

Intent means that a person had the purpose to do a thing. It means that he makes an act of the will to do a thing. This instruction is substantially in accord with Instruction No. 43 (Proof of Intent), Jr. Bar Section of D.C. Bar Ass'n, Criminal Jury Instructions for the District of Columbia (1966).

DEFT. CALDWELL: Although the jury found me guilty I still say that I had no weapons whatsoever and didn't use them on this officer * * *.

THE COURT: Who hit him with the garbage can?

DEFT. CALDWELL: I don't know. I didn't see it in the kitchen * * *.

THE COURT: Well, Mr. Caldwell—

DEFT. CALDWELL: I was never back in the kitchen.

THE COURT: The officer testified he saw you.

DEFT. CALDWELL: I had three witnesses that come in here to say—

THE COURT: I also have a feeling that there were some witnesses in this case who had been threatened, too.

It is the judgment of this court * * *. Caldwell was then sentenced to concurrent terms of three to nine and five to fifteen years.

Scott v. United States, 135 U.S.App. D.C. ——, 419 F.2d 264 (Feb. 13, 1969), relied on by appellant as a precedent calling for vacating the sentence, is a case with a narrow holding and extensive dicta.[2] The holding relates to a relatively rare case in which the sentencing judge "stated repeatedly throughout the hearing that he did not believe the exculpatory testimony the appellant had given at trial" (419 F.2d at 267) and, in the context of the particular hearing, there was an apprehension that the judge had used the general approach of a maximum sentence merely because the defendant (in his opinion falsely) asserted his innocence. In the case before us, it was the defendant who referred to the merits, on allocution, as a reason for clemency, and the judge was at most referring to his own view of the credibility of the prosecution's witness (and possible reason for denying credit to the testimony of others) as an explanation of his refusal to accord special clemency. There is no reasonable suggestion that the judge was

referring to the possibility of threats as an additional offense, heightening the sentence he would otherwise have meted out. We accordingly affirm.

Affirmed.

**D. C. TRANSIT SYSTEM, INC.,**
Petitioner,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent.**

Public Service Coordinated Transport, National Association of Motor Bus Owners, Intervenors.

No. 22904.

United States Court of Appeals
District of Columbia Circuit.
Argued Oct. 22, 1969.
Decided Dec. 9, 1969.

---

2. Indeed, it appears that some of the views expressed in dicta by the Chief Judge in the *Scott* opinion were not shared by the other members of the panel.

metropolitan area and which provided overnight hotel accommodations for tour patrons who were taken on sight-seeing tours with all passengers departing from and returning to same bus at each stop. Act of Sept. 15, 1960, art. 8, 74 Stat. 1034; Act of Oct. 9, 1962, art. 12, § 1, 76 Stat. 764; D.C.C.E. § 47–2331(c).