**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert L. JOHNSON,
Defendant-Appellant.**

**No. 79–2059.**

United States Court of Appeals,
Seventh Circuit.

Submitted July 8, 1981.*

Decided Aug. 17, 1981.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively decided that oral argument was unnecessary. The notice provided that any party could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 14(f). Neither party filed such a statement. Upon consideration of the briefs and the record, the appeal is submitted for decision without oral argument.

In a letter dated August 20, 1980, counsel for Johnson, John M. Schmolesky, notified the court of the withdrawal of his appearance in the case. The letter stated that Schmolesky represented Johnson while Johnson was incarcerated at the Federal Correctional Institute in Oxford, Wisconsin. Schmolesky resides in Wisconsin and had no contact with Johnson after Johnson was transferred from Oxford. Also, it appears that Schmolesky never truly represented Johnson but merely offered Johnson advice when Schmolesky was a supervising attorney for the University of Wisconsin Law School's Legal Assistance to Institutionalized Persons Program. The motion to withdraw is granted. We have utilized Johnson's pro se principal and reply briefs and the government's brief in disposing of this case.

Albert L. Johnson, Chicago, Ill., for defendant-appellant.

James R. Streicker, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and WOOD, Circuit Judges.

CUMMINGS, Chief Judge.

Petitioner-appellant, Albert L. Johnson, appeals from the denial of his petition under 28 U.S.C. § 2255. In his petition Johnson alleged three separate grounds for relief: 1) the sentence was improperly based upon threats made by Johnson to a government informant; 2) the evidence was insufficient to support a conviction; 3) his trial attorney did not provide adequate representation. The district court denied the petition without holding an evidentiary hearing and also denied Johnson's petition for recusal under 28 U.S.C. §§ 144 and 455.

I.

Johnson was charged in a six-count indictment. Count one charged Johnson with conspiring to distribute cocaine in violation of 21 U.S.C. § 846. Counts two, four, and six charged Johnson with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Finally, counts three and five charged Johnson with unlawfully carrying a firearm while committing a felony—to wit, distributing cocaine—in violation of 18 U.S.C. § 924(c)(2).

The facts surrounding the various crimes charged are as follows: In April 1974 Sylvia Moore contacted the Drug Enforcement Administration (DEA) and offered her co-

operation as a government informant in connection with drug trafficking. DEA agents Kenneth Labik and Saul Weinstein agreed to pay Moore for the information she would provide. Through Moore, agents Labik and Weinstein met petitioner Johnson. Soon after meeting Johnson, Labik and Weinstein had Moore arrange a drug sale with Johnson for $1300. On April 22, 1974, pursuant to these arrangements, Labik and Weinstein went to Moore's house. Moore called Johnson and said that Labik and Weinstein had the money. Johnson replied, "Okay. Tell them to sit tight. I'll be right over." Approximately one-half hour later Thomas Harris, Johnson's cocaine source, delivered an envelope containing cocaine to Moore's house. Weinstein field-tested the cocaine and discovered that it was four or five grams less than the amount they were told they would receive. Shortly thereafter Johnson arrived at Moore's house. Johnson removed his coat and Labik noticed that he was wearing a shoulder holster with a gun in it. Labik took the gun from Johnson, who offered no resistance. Johnson asked Labik if he liked the cocaine, to which Labik responded that it was underweight and the price was too high. Johnson himself measured the cocaine and agreed that it was underweight. Although complaining about the price, Labik then handed Johnson the $1300.[1] Labik returned the gun as Johnson left the house.

Moore set up another meeting with Johnson for April 30, 1974. Labik and Weinstein met Johnson at Moore's house with $650. However, Johnson informed the agents that he did not have the package and had to place a phone call. Labik proceeded to pat down Johnson and discovered a loaded gun in his waistband. Labik removed the gun. Thereafter Johnson placed the phone call and approximately twenty minutes later Harris arrived. Harris and Johnson went upstairs and Johnson returned with a plastic pouch containing co-

caine. Labik then paid Johnson $650. The agents left the house and returned the gun to Johnson as they left.

The jury convicted Johnson on all counts. He was sentenced to fifteen years on counts one, two, four and six with a three-year mandatory parole term. These were to run concurrently. On counts three and five Johnson received five years. These too were to be concurrent ·but consecutive to the fifteen years received on the other charges. His conviction was affirmed by unpublished order on direct appeal.[2] This petition followed.

## II.

A perusal of Johnson's motion to recuse the district judge reveals that it is insufficient and therefore was properly denied by the district court. Many of the allegations of bias and prejudice are simply conclusory and therefore are insufficient to support a recusal motion. *Berger v. United States,* 255 U.S. 22, 33–34, 41 S.Ct. 230, 233, 65 L.Ed.2d 481 (1921); *United States v. Jeffers,* 532 F.2d 1101, 1112 (7th Cir. 1976), *aff'd in part, vacated in part,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

▬ Those allegations of bias and prejudice which are of a more factual nature are nonetheless insufficient to support a recusal motion. The crux of Johnson's motion for recusal was that the district court had been exposed to statements contained in *in camera* documents which the government submitted to the district court.[3] These alleged prejudicial statements apparently related to threats made by Johnson to Sylvia Moore, the government informant.

In resolving this issue we are guided by the principle that the bias or prejudice must arise from an extrajudicial source and not merely from the judge's participation in the case. *United States v. English,* 501 F.2d 1254, 1263 (7th Cir. 1974), *cert. denied sub nom. Hubbard v. United States,* 419 U.S.

---

1. Although Harris had delivered the cocaine, it was Johnson who received payment therefor.

2. *United States v. Johnson,* No. 76–1350 (7th Cir. Oct. 15, 1976).

3. These documents were submitted to the district court pursuant to a discovery request made by Johnson.

1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). As noted above, the only arguable extrajudicial source would be the documents submitted *in camera*.

Apparently Johnson's contention is that the material contained in the *in camera* submission is *ex parte* material not evidentiary in nature and thus is extrajudicial in nature. We disagree and conclude that information obtained through *in camera* submissions are not "extrajudicial." In *United States v. Montecalvo*, 545 F.2d 684 (9th Cir. 1976) (*on rehearing*), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229 (1977), the defendant pled guilty and then withdrew the guilty plea. After the initial plea the district court had read a presentence report on the defendant. The defendant made a motion to recuse which was denied. The court of appeals affirmed and held that "[t]he district judge's knowledge of ... facts contained in reports which were properly brought to his attention during the performance of his judicial duties is not a basis for disqualifying a judge." 545 F.2d at 685.

Similarly, in this case the information brought to the attention of the district judge was during the performance of his judicial duties. It being clear that the information in no way caused the district court to be biased or prejudge the case, the motion to recuse was properly denied.[4]

### III.

Johnson contends that his sentence was improper because the district court relied on alleged threats Johnson made to government informant Sylvia Moore. In certain instances reliance in sentencing on threats made to witnesses (or other individuals) can be improper. *Allen v. United States*, 420 F.2d 223, 226 (D.C. Cir. 1969). The court in *Allen*, in dicta, disapproved of the consideration of the threats as additional offenses for purposes of sentencing. The unfairness of this is self-evident—the defendant is essentially being sentenced for offenses for which he was not tried and convicted.

Any error which would result from relying on threats to witnesses in sentencing is absent in this case for the simple reason that the district court did not rely on the threats when sentencing the defendant. An examination of the record indicates that counsel for the government did mention the threats at the time of sentencing. However, Johnson's counsel objected, government counsel desisted, and the district court did not mention the threats when sentencing Johnson.[5] Rather, the district court properly relied upon the severity of Johnson's offenses as well as his past record. The judge later denied that he gave any

---

**4.** This distinguishes *United States v. Sciuto*, 531 F.2d 842 (7th Cir. 1976) where the district court had prejudged a crucial issue in the case.

**5.** In certain instances references to improper factors by government counsel at sentencing may be so pervasive that it might be contended that reliance or consideration of the facts could not be avoided. As noted above, the references to the threats occurred only once and counsel immediately objected.

This distinguishes our decision in *United States v. Harris*, 558 F.2d 366 (7th Cir. 1977). In *Harris* the defendant claimed that the sentencing court relied on erroneous and prejudicial hearsay allegations in the presentence report. We then examined the cases which hold that where a judge specifically relies on prejudicial hearsay information in sentencing, the defendant must be given an opportunity to rebut the information. *Id.* at 374. In *Harris*, the sentencing judge did not specifically rely upon the prejudicial hearsay. Nonetheless, we held

that the defendant need not show explicit reliance on improper factors or erroneous information under the facts of the case. *Id.* at 375. In reaching this conclusion we emphasized that the evidence supporting the conviction was not overwhelming; the crime for which the defendant was convicted (threatening a witness, 18 U.S.C. § 1503) was not accompanied by aggravating circumstances; and the obvious disparity between the two probation officers' reports regarding the defendant's life and background. These factors led us to conclude "that it was not improbable that the trial judge was influenced by improper factors in imposing sentence." *Id.* In the present case the evidence was overwhelmingly in support of the convictions and no such serious discrepancy in facts regarding Johnson appears in the record. Also, we note that Johnson's counsel immediately objected to the reference to the alleged threats and thereafter they were neither referred to by government counsel nor the sentencing judge.

weight to such threats when sentencing petitioner (slip op. at 3) (July 26, 1979).

Johnson points to one statement made by the district court where it remarked that the government agents investigating the case had acted admirably by putting their lives on the line while conducting this investigation. Johnson argues that this comment actually was in reference to the alleged threats made by Johnson to Sylvia Moore. Our reading of the record convinces us that this statement by the district court had nothing to do with the alleged threats, but rather concerned the fact that Johnson carried a loaded gun during two of the drug transactions.

### IV.

■ Johnson's primary contention is that the DEA agents removed the pistol from his person prior to the consummation of the sale of cocaine, and thus he could not be said to carry a firearm "during the commission of [the] felony." 18 U.S.C. § 924(c)(2).[6] We disagree with Johnson's reading of the statute.[7]

It is axiomatic that the starting point in every case involving statutory interpretation is the language of the statute itself. *CBS, Inc. v. FCC*, —— U.S. ——, ——, 101 S.Ct. 2813, 2820, 69 L.Ed.2d 706 (1981). While this canon of statutory interpretation

is often restated, the language of the statute often fails to provide a clear solution to the issue presented for review.[8] The words which are the subject of the statutory interpretation may be open to differing definitions. Indeed, in the present case differing editions of the same dictionary offer definitions to support both Johnson's position and the position urged upon us by the government.[9]

Examination of the language of the statute may be the starting point in cases of statutory interpretation, but it is rarely the ending point. In recent decisions we have emphasized the overriding significance of the purpose of the statute in its interpretation. *United States v. Professional Air Traffic Controllers Organization*, 653 F.2d 1134, 1141 (7th Cir. 1981); *Foulkes, supra*, 638 F.2d at 1110. We therefore must examine the legislative history and determine Congress' intent in passage of § 924(c)(2).

Section 924(c)(2) was enacted as part of the Gun Control Act of 1968. Pub.L.No.90–618, 82 Stat. 1223 (1968). This legislation sought to strengthen the federal control over interstate and foreign commerce in firearms. H.R.Rep.No. 1577, 90th Cong., 2d Sess., reprinted *in* [1968] U.S. Code Cong. & Ad.News 4410, 4411. In amending Title 18 Congress was specifically concerned about the growing use of firearms in violent

---

6. Title 18 U.S.C. § 924(c)(2) provides:
 (c) Whoever—

 . . . . .

 (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty-five years and, notwithstanding any other provision of law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony.

7. Because we conclude the evidence was sufficient to support the conviction we need not discuss whether that issue may be raised in a § 2255 proceeding.

8. *See, e.g., Foulkes v. CIR*, 638 F.2d 1105, 1109 (7th Cir. 1981) (language of statute not clear or self-defining).

9. Webster's New International Dictionary (unabridged) (2d Ed. 1959) defines "during" as "in the time of; throughout the continuance or course of." This supports Johnson's contention that the firearm must be carried throughout the entire felonious activity. Webster's Third New International Dictionary (unabridged) (1961) defines "during" both as "throughout the continuance or course of" and as "at some point in the course of." The latter definition supports the government's contention that Johnson need only have carried the firearm at some point in the felonious activity.

crimes. *Id.* at 4412. Section 924(c)(2) attempts to remedy this problem by making the carrying or use of a firearm during the commission of a felony punishable as a separate offense. *United States v. Eagle*, 539 F.2d 1166, 1171 (8th Cir.), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1976).

In the present case it is undisputed that at some time on each of the two occasions when the cocaine was sold, Johnson was armed. Also it is undisputed that prior to being disarmed Johnson had formulated the intent to distribute the cocaine and had engaged in acts in furtherance of the distribution. The gun was only removed prior to the transactions being consummated. In light of these facts we conclude that Johnson's activity is covered by § 924(c)(2). Exclusion of Johnson from the statute would contravene the purpose of the statute—that is, decreasing the use and carrying of firearms in felony cases. Up to the time the gun had been removed Johnson was engaged in felonious activity and his possession of the gun posed a danger to those individuals involved in the drug transaction.

While no case has directly dealt with the construction of the phrase "during the commission of any felony" the reasoning of *United States v. Reid*, 517 F.2d 953 (2d Cir. 1975) supports our conclusion. In *Reid* a Drug Enforcement Agency officer entered a liquor store in which the proprietor of the store was being assaulted. The officer drew his gun and ordered the assailant to "freeze." An armed accomplice in the store pointed his gun at the officer and ordered the officer to surrender his gun. The officer complied. The accomplice then took the officer's gun and shot him. The defendants were charged in a five-count indictment, including wounding of a federal officer as lawful custodian of government property in effecting a robbery (18 U.S.C. § 2114) and robbery of government property (18 U.S.C. § 2112). The property which was the focus

of each charge was the officer's revolver. The defendants also were charged with the use of a firearm during the commission of a felony.[10] Defendants argued that they could not be convicted of using a firearm during the commission of a felony because by the time the firearm was used, the robbery had been completed. 517 F.2d at 965.

The Second Circuit, per Judge Friendly, rejected this contention, reasoning that the robbery was not complete with the taking of the property. The crime of robbery consists of both the taking and the carrying away of the property. *Id.* After the defendant took the gun and shot the agent, there still was the possibility that either the agent or other law enforcement officers or Good Samaritans might intervene and attempt to retrieve the property. *Id.* Therefore, the felonious activity was not complete when the defendant initially took possession of the gun.

To be sure, *Reid* does not explicitly hold that carrying or using a firearm for only a portion of the felonious activity is within the coverage of § 924(c)(2). However, the reasoning and result are fully consistent with such an interpretation. The defendants in *Reid* did not possess the firearm during the taking portion of the felony but only when carrying away the property. Yet the court held the defendants still fell within the coverage of § 924(c). Similarly, in the present case Johnson entered Moore's home armed and on each instance began to consummate the cocaine sale. As noted above, each time he arrived at Moore's home he was engaged in felonious activity—to wit, the distribution of cocaine. As in *Reid* the conviction was not defective merely because defendant did not have the firearm during the taking of the property, so too this conviction is not defective because Johnson did not have the firearm or was not present during the actual transfer of cocaine.[11]

---

**10.** Although *Reid* concerned § 924(c)(1) (use of a firearm to commit a felony) the principles in that decision apply to an interpretation of § 924(c)(2) which punishes carrying a firearm during the commission of a felony.

**11.** *Cf. United States v. Elorduy*, 612 F.2d 986 (5th Cir.), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 861 (1980) (defendant proper-

## V.

Johnson's final contention is that his trial counsel's representation fell below the standard required by the Sixth Amendment. We disagree.[12]

██ Johnson specifies three instances where his counsel's representation was allegedly inadequate. First, Johnson claims that his counsel should have called Sylvia Moore as a witness. A review of the record indicates that the decision not to call Moore as a witness was a strategic choice. Moore had made many prior statements which incriminated Johnson and therefore might well have proved harmful as a witness on his behalf. And if Moore had been able to testify in Johnson's favor the prosecutor would have been able to impeach her by prior inconsistent statements. Thus Johnson's counsel's failure to call Moore was not ineffective assistance, but a tactical decision made at trial.

██ Johnson next claims that his counsel failed to request an instruction on the theory of the defense proffered above—that he did not carry the weapon for the entire time the felony was committed. As we concluded above, this theory is unsupported by the law and therefore was not the proper subject for a jury instruction.

██ Finally, Johnson argues that his trial counsel did not adequately represent him at sentencing. We have reviewed the sentencing transcript and conclude that counsel did provide adequate assistance. Counsel properly objected to comments made by the prosecutor and offered evidence in favor of mitigation. While the district court did sentence Johnson to the maximum sentence on three of the counts, this was not a result of ineffective assistance of counsel but the seriousness of Johnson's crimes and prior record.[13]

The judgment of the district court is affirmed.

---

ly convicted under § 924(c)(2) although not present at time drugs exchanged but only for receipt of money in payment).

We need not decide if the removal of a firearm or absence of a firearm during some aspects of felonious activity may never be a defense in a § 924(c)(2) case. We note that Johnson carried the gun into the house where the sale was to be completed. He clearly posed a danger to federal agents both before the gun was removed and after it was returned.

12. Government counsel states the standard for evaluating counsel's representation as whether the trial was a "sham or mockery." However, in *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), we adopted the "minimum standard of professional representation" standard.

13. Johnson alleges that counsel's failure to read his presentence report prior to sentencing amounts to a violation of his Sixth Amendment rights. While such failure may sometimes rise to the level of a violation of the Sixth Amendment or require an exercise of supervisory power, *United States v. Pinkney*, 551 F.2d 1241 (D.C. Cir. 1976), this is not such a case. Johnson's counsel spoke to Johnson prior to sentencing and Johnson's prior arrest and conviction record must have been discussed because counsel evinced familiarity therewith. Also, an error that was in the presentence report was corrected at the time of sentencing.