**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter Howard BROWN,
Defendant-Appellant.**

No. 83–3307.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1985.

Decided March 6, 1986.

588

Janis D. Roberts, Chicago, Ill., for defendant-appellant.

Eric J. Klumb, Asst. U.S. Atty., Joseph P. Stadmueller, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before WOOD, Circuit Judge, ESCH-BACH, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

On February 16, 1983 defendant Walter Howard Brown was convicted after a jury trial of a single count of mail fraud in violation of 18 U.S.C. § 1341. At that time sentencing was set for March 31, 1983 and a pre-sentence investigation ordered. Defendant failed to appear for his sentencing. On August 6, 1983, approximately six months after his mail fraud conviction, defendant was arrested in Houston, Texas and returned to the Eastern District of Wisconsin. Consequently, a few weeks later, on August 23 defendant was indicted pursuant to 18 U.S.C. § 3146 for failure to appear for his sentencing on the original mail fraud conviction. On September 7, 1983, eight days later, Judge Evans sentenced defendant to a term of 15 months imprisonment on the original mail fraud conviction. On December 2, 1983 a jury found defendant guilty for his failure to appear for sentencing. On December 22, 1983 Judge Warren sentenced defendant to an 18 month term of imprisonment for his failure to appear and ordered this second sentence to run consecutively to the original mail fraud sentence. Defendant appeals his conviction pursuant to 18 U.S.C. § 3146 on various grounds. For reasons set forth below, we affirm.

■ Defendant Brown's first argument concerns what he believes was a deprivation of his right to testify fully on his own behalf at trial. Defendant claims his inability to answer a key question at trial effectively deprived him of his Fifth Amendment guarantee of due process of law. At this point a review of the procedural history of the case is necessary. Brown raised defenses of insanity and, in the alternative, necessity (health reasons) to explain his absence at the sentencing

hearing for the original mail fraud conviction. When defendant dutifully supplied a letter to Judge Warren expressing his intent to rely on an *insanity* defense (see F.R.Crim.P. 12.2), the government subsequently filed a motion in limine requesting the court to exclude defendant's testimony "to the extent it is offered solely for the purpose of establishing a *necessity* defense." (Emphasis supplied.) Defendant filed an answer requesting all evidence supportive of all theories of defense be admitted. Judge Warren decided to withhold ruling on this issue until it presented itself at trial.

At trial, when defendant was asked on direct examination, "Could you have shown up for that sentencing hearing?" the government objected. The court stated:

"I think this issue you've already dealt with, gentlemen, in the motion in limine. Court will sustain the objection. In order for defense [of] necessity it has to be far more than the facts here." (Tr. 336)

Hence, defendant was not allowed to answer this question and he claims he was therefore deprived of his Fifth Amendment right to testify fully on his own behalf. The government correctly points out there is some confusion as to whether the evidence was offered for purposes of the insanity of necessity defenses. Yet on pages 11–12 of defendant's opening brief, it is stated, "... when ... the sole issue in a failure to appear case is a defendant's substantial capacity ... or his mental capacity to form the requisite mental state ... the question of 'why did you fail to appear?' is most relevant."

We believe the trial court's refusal to allow defendant to answer the question mentioned above does not constitute reversible error under the circumstances of this case. This is because defendant was given sufficient opportunity to present testimony and evidence in support of both the insanity and necessity defenses despite the

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

trial court's refusal to allow him to answer the question above.

Concerning the insanity defense, we note defendant did testify to a certain extent on this issue. Defendant was also allowed to produce his own expert witness, psychologist Dr. Burton Silberglitt, to establish he lacked the mental capacity to conform his conduct to the requirements of the law during the relevant time period. While we emphasize a defendant should have the right to testify on his own behalf on the issue of his sanity (see *Stewart v. U.S.*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); *U.S. v. Alden*, 767 F.2d 314 (7th Cir.1984)), we do not believe the trial court's refusal to allow defendant to answer the single question above constitutes reversible error under the circumstances. Defendant relies on cases such as *Alicea v. Gagnon*, 675 F.2d 913 (7th Cir.1982) (recognition of the principle of a defendant's constitutional right to testify in his own behalf) and *McMorris v. Israel*, 643 F.2d 458 (7th Cir. 1981) (arbitrary, unjustified use of rules of evidence cannot be employed to deprive defendant of his Sixth Amendment right to fair trial). However, in these cases (as well as the often-cited *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)), the result of the trial court evidentiary ruling was much more severe, resulting in a defendant's total inability to present a theory of defense, a deprivation much more far-sweeping and hindering than the situation found in the case at bar. In the case at bar, defendant was allowed to present expert testimony supportive of his insanity defense (cf. *U.S. ex rel. Enoch v. Hartigan*, 768 F.2d 161 (7th Cir.1985)). We see no reversible error.

Further, if defendant's answer to the question as to why he did not appear at his sentencing hearing was to bolster a necessity defense, there was certainly no reversible error. This is because from the evidence presented defendant as a matter of law was not entitled to rely on a necessity defense (see infra.). However, assuming *arguendo* he was, defendant himself testified he fled for fear of what would happen to his health in jail. Among other things,

he stated two doctors, a Dr. Pfeiffer and a Dr. Kulsch, told him he would not last more than 90 days in jail. Dr. Silberglitt testified defendant believed he would be homosexually abused and beaten if he went to prison and that his weak heart could also kill him quicker in jail. Defendant's brother testified defendant told him he believed prison would kill him. Surely, defendant was sufficiently allowed to present his version of an adequate necessity defense to the jury. However, we do not believe defendant's fear for his health in jail is sufficient reason to maintain a defense of necessity in an 18 U.S.C. § 3146 case. We believe the trial court did not err in refusing to instruct the jury concerning this theory of defense. It is well-established defendant must meet certain threshold requirements to have a theory of defense presented to the jury.

"... defendant is entitled to have the jury consider any theory of defense which is supported by law and has some foundation in the evidence, even though such evidence may be weak, insufficient or of doubtful credibility. *United States v. Lehman*, 468 F.2d 93, 108 (7th Cir.), cert. denied, 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232 (1972); *United States v. Vole*, 435 F.2d 774, 776–77 (7th Cir.1970). However, if the defendant fails to sustain his evidentiary burden the court is duty-bound not instruct the jury on the defense."

*U.S. v. Patrick*, 542 F.2d 381, 386 (7th Cir.1976); see also *U.S. v. Mitchell*, 725 F.2d 832, 836–37 (2nd Cir.1983); *U.S. v. Shapiro*, 669 F.2d 593, 596 (9th Cir.1982); *U.S. v. Cullen*, 454 F.2d 386, 390 (7th Cir. 1971).

■ We agree with the district court that defendant presented insufficient evidence as a matter of law to maintain a defense of necessity. In *U.S. v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), it was stated that in a necessity defense:

"... one principle remains constant: if there was a reasonable, legal alternative

to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses (of duress or necessity) will fail." 100 S.Ct. at 635 (parentheses added) (citations omitted).

This principle was recently recognized in *U.S. v. Quilty*, 741 F.2d 1031, 1033 (7th Cir.1984). Defendant was not entitled to a defense of necessity since, to paraphrase *Bailey*, supra, he had a reasonable, legal alternative to doing the criminal act and avoiding the harm he feared. After all, there was no guarantee defendant would be imprisoned for his criminal offenses at the time of his March 1983 sentencing hearing. The trial court had discretion to mandate alternative forms of punishment. If defendant had appeared at sentencing and established a medical condition so extraordinarily fragile it proved jail life would be a severe medical hindrance, the district court would have been free to fashion other forms of punishment. Defendant had ample opportunity to present such a set of medical circumstances at the sentencing hearing. Hence, we conclude there was a reasonable legal alternative to violating the law (see *Bailey*, supra) and Judge Warren did not abuse his discretion in refusing to instruct the jury on the defense of necessity.

■ Defendant claims the district court erred when it allowed the government to introduce evidence of a fraud perpetrated by defendant on two trucking companies while defendant was in Texas. The fraud was committed after the date of the March sentencing hearing. Defendant claims that since the Texas fraud was an act dissimilar to his failure to appear at sentencing, this subsequent "bad act" was irrelevant and constituted highly prejudicial character testimony which should have been excluded under F.R.Evid. 404(b).

We disagree. Defendant's activities after his failure to appear were relevant to the issue of defendant's sanity. The evidence was properly admitted within the discretion of the district court not to exemplify defendant's dubious character, but rather as probative of defendant's mental ability to organize and orchestrate. Those qualities are probative of defendant's awareness of the world surrounding him. Likewise, we do not believe the Texas fraud should have been excluded under F.R.Evid. 403. We do not believe the connection of defendant's fraud to his mental capacity caused unfair prejudice. It was probative as to defendant's ability to organize a plan with a goal. We note there is no allegation the district court failed to instruct the jury as to the limited use of such evidence.

■ Defendant objects to the government's criticism during closing argument of the Rohrschak ink blot test, a test relied upon by defendant's expert witness, psychologist Burton Silberglitt. We agree that the prosecution should refrain from offering its own opinion on matters requiring expert knowledge. However, as in the case of *U.S. v. Brawner*, 471 F.2d 969 (D.C.Cir.1972), a case advanced by defendant, we do not believe the prosecution's comment constituted reversible error. There was prior testimony presented regarding the questionable reliability of the tests at issue. We do not believe the government's remarks were so aggravating or persistent as to warrant reversal under the circumstances of this case. We also note defendant admits he failed to object to the prosecutor's comments during the closing argument. This is further reason why reversal is improper here.

■ Defendant claims that the district court erred because it failed to follow Rule 32 of the Federal Rules of Criminal Procedure and question defendant concerning his access to the Presentence Investigation Report (PSI) and as to whether there were disputed factual issues in the report. Defendant relies on *U.S. v. Rone*, 743 F.2d 1169 (7th Cir.1984), to conclude reversible error occurred here. We believe *Rone* is distinguishable and that no reversible error occurred. We note defendant has never alleged any factual inaccuracies in the PSI. Defendant does object to the personal conclusions/opinions of a Mr. Ed Jedinak who

characterized defendant Brown as lacking remorse and as one who "thumbs his nose" at the system. However, Mr. Jedinak's personal opinion about defendant does not constitute a factual dispute.[1] The district court was allowed to consider and weigh the personal opinion of Mr. Jedinak as it saw fit. Defense counsel was given an opportunity to object to Mr. Jedinak's personal conclusions. This situation is markedly different from the one witnessed in *Rone.* In *Rone,* the case relied upon by defendant Brown, defendant was convicted of cultivating marijuana. He objected to the amount of marijuana the PSI claimed he cultivated. The PSI claimed it was eight "patches," the defendant claimed two. The issue became how many pounds of marijuana would be considered to have been cultivated by defendant for purposes of determining a proper sentence. The district court never squarely addressed this factual dispute as required by Rule 32(c)(3)(D). However, while the factual dispute in *Rone* deserved further airing, the issue of the amount of marijuana cultivated in *Rone* is distinguishable from defendant's mere objection to the personal opinion of Mr. Jedinak, which does not constitute the type of factual inaccuracy needed to be addressed under Rule 32. Further, defendant was allowed to express his disagreement with the Jedinak opinion.

■ Defendant also claims a Rule 32(a)(1)(A) and (c)(3)(A) violation occurred in that the district court failed to determine or directly address whether defendant and his counsel had the opportunity to read and discuss the PSI. We see no reversible error here. We note defendant admits in his brief defense counsel was permitted to review the PSI a day before sentencing. Surely there was enough time for defendant and counsel to discuss the report considering the circumstances surrounding this case. (Cf. *Rone,* supra, where defendant denied he had access to the report before the hearing.) Further, for reasons stated above, we also believe defendant had ample opportunity to comment concerning his only objection to the report— the personal opinion of Mr. Jedinak. Hence, defendant's disputed issue was squarely addressed by the court. In *U.S. v. Harris,* 558 F.2d 366 (7th Cir.1977), we stated:

> "A sentence must be set aside where the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *Id.* at 375.

Mr. Jedinak's opinion does not constitute false information within the meaning of *Harris* and therefore defendant has failed to meet his burden here.

■ Defendant's final argument is that Judge Warren erred in sentencing him to a consecutive sentence on the bail jumping charge. This is because previous to Judge Warren's sentence Judge Evans, in the sentencing hearing on the original mail fraud conviction, stated he would consider defendant's bail jumping violation. Hence, defendant claims that that referred-to consideration constituted punishment for the bail jumping as well as the mail fraud. This argument was expressly rejected by the Seventh Circuit in *U.S. v. Haygood,* 502 F.2d 166 (1974) where we stated:

> "The fact that a particular charge is pending in another court may make it appropriate for the sentencing judge to inquire into that matter, but if he should attach some minimal significance to it,

---

1. Cf. *U.S. v. Petitto,* 767 F.2d 607 (9th Cir.1985) (legitimate factual dispute existed because defendant flatly denied participating in the cutting and distribution of cocaine); *U.S. v. Stewart,* 770 F.2d 825 (9th Cir.1985) (defendant challenged that he had been arrested on drug charges in Canada in 1975, that he had attempted to run down a Canadian police officer with his car and that he had run an extensive drug manufacturing operation in Canada prior to coming to the United States); *U.S. v. Velasquez,* 748 F.2d 972 (5th Cir.1984) (defendant objected to presentence report which labeled him a "notorious alien smuggler" creating innuendo that defendant had in fact been involved in smuggling aliens previously, which had not been established).

his exercise of the human faculty of judgment is not the constitutional equivalent of a formal judgment of the court forever barring a proceeding before another tribunal." *Id.* at 169.

See also *U.S. v. Durbin,* 542 F.2d 486 (8th Cir.1976); See more generally *U.S. v. Piteo,* 726 F.2d 50 (2nd Cir.1983); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

The conviction of the defendant is hereby AFFIRMED.