**UNITED STATES of America,**

v.

**Pedro Antonio CORONA, a/k/a "Pedrito", Defendant.**

**No. 86 Cr. 0797 (SWK).**

United States District Court, S.D. New York.

May 19, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for Government.

B. Alan Seidler, Nyack, N.Y., for defendant.

**MEMORANDUM OPINION AND ORDER**

KRAM, District Judge.

Presently before the Court is the government's motion *in limine* to exclude evidence concerning defendant's putative defense of duress. The government is prosecuting defendant for failure to appear at a sentencing while released on bail, a violation of 18 U.S.C. § 3146(a) and (b)(1)(A). The parties appeared before this Court on May 11, 1988 for an evidentiary hearing to consider the government's motion. For the reasons stated below, the government's motion is granted.

### Background

Pedro Corona ("Corona") was arrested on April 14, 1986 on a complaint charging him with various violations of the drug laws, including possession with intent to distribute heroin within 1000 feet of a public school. Following his arraignment, at which he was represented by appointed counsel, Corona indicated his willingness to cooperate with the government and signed a cooperation agreement on April 22, 1986. The case agent, detective Richard Puntillo, provided Corona with two telephone num-

bers at which he could reach Puntillo with information or in the event of danger. Corona testified that he understood that he was supposed to report to Puntillo and only Puntillo. (Tr. at 12). The Assistant United States Attorney involved in the action at that time, Peter Sobol, did not provide Corona with any phone numbers. (Tr. at 4).

Corona plead guilty to the narcotics charge on May 8, 1986 before Judge Broderick. (SS 86 Cr. 0201 (VLB)). At that time, sentencing was set for June 25, 1986. Corona stated that he knew he was supposed to return to court on the 25th or 28th, and stated during cross-examination that he was to appear on one of these days in June, 1986. (Tr. at 22). A probation officer, Victoria Castagna, interviewed Corona on May 14, 1986 and at a state court appearance on May 27, 1986.[1] (Broderick Hearing at 4). Corona failed to appear for his sentencing on June 25, 1986, and Judge Broderick issued a bench warrant for his arrest. Corona, after identifying a copy of his passport, stated that he left the United States on June 12, 1986. (Tr. at 19). He returned to the United States from Santo Domingo, Dominican Republic, on August 24, 1986. *Id.* at 6 and 19. On February 17, 1987, Corona left the United States a second time for the Dominican Republic. *Id.* at 20. Corona was arrested on June 28, 1987, as he attempted to re-enter the United States at Puerto Rico. *Id.*

### Discussion

*Constitutional Propriety of this Motion*

In his papers and by counsel's opening statements, defendant has objected, though informally, to the constitutionality of these pre-trial proceedings. In his initial reply papers to the government's motion, defendant stated that a jury should consider all the facts and that this Court should not consider the government's "unusual" pre-trial motion since defendant had not waived his right to a jury trial. Though emotionally forceful, defendant's argument has no merit.

The Second Circuit has recently reaffirmed that a district court may exclude before trial a putative duress defense if the evidence would be insufficient to warrant a jury charge at trial. *United States v. Alicea*, 837 F.2d 103, 107 (2d Cir.1988). The Court reasoned that "juries should not be burdened with testimony relating to duress ... [if] the asserted defense fails as a matter of law." *Id.* This process does no harm to defendant's right to testify on his own behalf. *Id.; see also United States v. Bailey*, 444 U.S. 394, 416, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980) (jury function not undermined if evidence concerning defense is insufficient); *United States v. Brown*, 785 F.2d 587, 590 (7th Cir.1986) (defendant not entitled to present defense that fails as a matter of law). This Court must therefore consider the legal sufficiency of the defense. *Alicea, supra,* 837 F.2d at 106.

*Sufficiency of the Putative Duress Defense*

The Government argues that the only affirmative defense in the statute, 18 U.S.C. § 3146, is inapplicable. That defense excuses the failure to appear if "uncontrollable circumstances prevent the person from appearing and surrendering, and [only if] the person appeared or surrendered as soon as such circumstances ceased to exist." 18 U.S.C. § 3146(c). Courts have looked to traditional duress and necessity analysis in interpreting this defense. *See United States v. Brown*, 785 F.2d 587, 590 (7th Cir.1986). In this Circuit, a defendant may seek to establish a duress defense in a case not involving a prison escape in the following circumstances:

A claim of duress or coercion constitutes a legal excuse for criminal conduct when, at the time the conduct occurred, the defendant was subject to actual or threatened force of such a nature as to induce a well-founded fear of impending death or serious bodily harm from which

---

1. Castagna did not testify at the hearing before this Court, but she did testify at a hearing before Judge Broderick on September 2, 1987, after Corona's capture, to consider whether Corona's original plea was valid. The Court ruled that Corona's initial plea was valid and set a new sentencing date. References to that hearing will be noted as "Broderick Hearing".

there was no reasonable opportunity to escape other than by engaging in otherwise unlawful activity.

*United States v. Agard*, 605 F.2d 665, 667 (2d Cir.1979), *cited in United States v. Mitchell*, 725 F.2d 832, 837 (2d Cir.1983) and *Alicea, supra*, 837 F.2d at 106.

The Second Circuit has recently held that, as a requirement of any duress defense, "a defendant must [have] take[n] reasonable steps to avail himself of ... [a reasonable opportunity to escape the threatened harm], whether by flight or by seeking the intervention of the appropriate authorities." *Alicea, supra*, 837 F.2d at 106. In *Mitchell*, the Court found that the defendant had provided no evidence to support a duress defense by failing "to put in issue any circumstance that would have precluded an attempt to take reasonable steps to remove himself from any perceived or apparent danger, [citation omitted], or to complain to law enforcement authorities." 725 F.2d at 837.

In the present case, defendant stated that some time after his release from jail following his arrest on the narcotics charges he learned from members of his family that someone intended to kill him. (Tr. at 5). Corona states that he attempted to contact Puntillo ("the police officer") on two or three occasions, and after receiving no response decided to leave the country. (Tr. at 6). Corona could not identify the names of the people making these threats, though he said he could guess who they were. (Tr. at 7). Different people threatened to kill his sister and some cousins if Corona did not "show up", though the evidence never identifies where Corona was to show up or for what purpose; Corona himself did not know. (Tr. at 7, 9, 18). The apartment at which Corona was living in Queens was broken into by unidentified people whom Corona concluded were the same ones who had made the threats. After Corona left the country, one of his cousins also left the country, allegedly in response to more threats. (Tr. at 14).

After returning to the United States in August, 1986, Corona stated that he again learned that unidentified people from the "street" were looking for him and intended to kill him. (Tr. at 7). At that point, he decided to leave the country again in response to those threats. During cross-examination, Corona stated that the last threats were made sometime in 1986, though he did not leave the country until February 17, 1987, at the very least six weeks later. (Tr. at 24). Corona was arrested in Queens earlier that same month on unrelated charges while using the alias Louis Serrano. (Tr. at 22). At no time were threats made personally to Corona and he could not specifically identify the persons making the threats or what they exactly wanted from him. He surmised that they were attempting to prevent him from cooperating with the government.

■ Without reaching the question whether these threats are immediate enough to constitute duress, the Court concludes that Corona did not take any reasonable steps to contact the authorities in order to remove himself from the alleged dangers.[2] Although Corona states he tried a few times in May, 1986, to contact Puntillo, he admits that he did not make any attempts thereafter to contact Puntillo or any other law enforcement officer. (Tr. at 20). He was in the United States for approximately six months after first returning to the United States and at no time did he attempt to notify the authorities. When he was arrested in February, 1987, he did not mention the threats. (Tr. at 22). On the occasions he passed through immigration and customs, he did not make any attempt to speak to them concerning the threats made on his and his family's lives until after his arrest in Puerto Rico. (Tr. at 20). He never sought protection for his family. (Tr. at 22).

These facts clearly indicate that Corona did not take reasonable steps to avoid his illegal conduct. He had ample opportunity to notify the police, Puntillo or customs

---

2. While flight is generally considered one of the means of reasonably avoiding coerced criminal activity, in the present case the flight itself was alleged the crime.

officials.[3] The Second Circuit found that a twenty-minute period in which the defendants were free from their alleged coercers was sufficient time within which to contact customs officials at an airport and accordingly upheld a denial of their duress defense. *Alicea, supra,* 837 F.2d at 103; *see also Mitchell, supra,* 725 F.2d at 837 (duress defense fails since defendant was not in constant company of alleged coercer). As the Court noted, "a defendant acting under a threat of death to relatives may be denied the defense of duress when he commits a crime after he had an opportunity to contact police". *Alicea, supra,* 837 F.2d at 107 (citing *Rhode Island Recreation Center, Inc. v. Aetna Casualty & Surety Co.,* 177 F.2d 603, 605–606 (1st Cir.1949)). This Court finds that Corona had more than ample opportunities to contact law enforcement officials in order to seek protection for himself or his family and to turn himself in to the proper authorities. His pattern of behavior suggests he was content with his freedom and had no intention of reminding the government that he was a fugitive. Under Second Circuit law, Corona's failure to take any reasonable steps to contact any law enforcement officials from June, 1986 until his capture a year later makes the duress defense unavailable to him as a matter of law.

### Conclusion

For the reasons stated above, the government's motion *in limine* to exclude evidence to support a defense of duress is granted.

SO ORDERED.

---

3. The fact that he only was given Puntillo's phone number does not minimize the many opportunities presented to him since he had contact with law enforcement officials in various contexts during the time he was a fugitive.