979 F.2d 248
 298 U.S.App.D.C. 309
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Lillian WEEKLY, Appellant.
 No. 92-3053.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 13, 1992.
Rehearing and Rehearing En Banc
Denied Feb. 4, 1993.
 
 Before SILBERMAN, BUCKLEY and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Lillian Weekly was convicted of possession of more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a) & (b)(1)(B)(ii). At her trial, Weekly attempted to present a duress defense to the jury. District Court Judge Harold H. Greene disallowed the defense because Weekly had insufficient evidence to support the elements of the defense. Although this case involves several interesting aspects of the duress defense which have not been explored in this Circuit, we do not reach any of these issues because Weekly's failure to notify the police of her predicament at the time they arrested her defeats her duress defense. We also reject Weekly's claim that the trial judge admitted a portion of her testimony in violation of Miranda v. Arizona, 384 U.S. 436 (1966).
 
 I.
 
 5
 It is undisputed that Weekly was found in possession of over 500 grams of cocaine when the police questioned her in Washington, D.C., in her Amtrack train compartment en route on the Fort Lauderdale-New York line. By way of exculpation, Weekly alleges that she engaged in this criminal activity under duress. According to her version of the events preceding her arrest, she and her fiance were preparing to go to the Fort Lauderdale train station where he planned to drop her off for her business trip to Albany, New York, when George Lyons came to Weekly's house. Weekly described Lyons, a lifelong acquaintance of her fiance, as a dangerous man reputedly involved in the drug trade. Lyons showed Weekly a gun and told her that if she did not follow his directions her "baby would be left without a father." Weekly who was pregnant with her fiance's child took this as a direct threat on her fiance's life. Lyons then placed a package in her luggage which she was to deliver to a man in New York. She was told to take a taxi to the train station while her fiance remained in Weekly's home with Lyons.
 
 
 6
 Although she was not followed, Weekly took the taxi directly to the train station and boarded the train bound for New York. Once on the train, she did not tell anyone on the train to notify the authorities for her despite numerous opportunities. Although she claimed that she was watched by a man whenever she stepped outside her compartment, she could have called a porter to her roomette at any time. The next morning the train made its scheduled stop in Washington's Union Station.
 
 
 7
 After identifying several suspicious aspects of Weekly's train reservation, Amtrack investigator Thomas Cook planned to talk with Weekly in Washington. Accompanied by a metropolitan police officer and Amtrack Police Sergeant Arthur Lawson, Cook entered Weekly's train car with a narcotics detection dog. The dog alerted at the door to Weekly's compartment. The metropolitan police officer and the dog then went to the end of the car while Cook and Lawson knocked on Weekly's door. She came to the door fully dressed and produced the requested identification and tickets. Officer Cook then asked her if she had any explosives, weapons or illegal narcotics. She answered no. Cook then asked Weekly if he could search her bag. She consented to the search, and Cook found a disk shaped package sealed with duct tape. Cook then asked her what was in the package, and Cook recalls that she responded, "you do not want to know." Cook then pierced the package, found what appeared to be cocaine, and placed Weekly under arrest.
 
 II.
 
 8
 Weekly alleges that the district court judge erred in his refusal to allow her to present her duress defense to the jury. The defense of duress is generally considered to consist of at least three elements: (1) an immediate threat of death or bodily injury, (2) a well-ground fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm. E.g., United States v. Jennell, 749 F.2d 1302, 1305 (9th Cir.1984), cert. denied, 474 U.S. 837 (1985). A defendant must offer some evidence on all three elements before the trial judge will permit the defendant to present the defense to the jury. United States v. Scott, 901 F.2d 871, 873 (10th Cir.1990); United States v. Jenrette, 744 F.2d 817, 821 (D.C.Cir.1984), cert. denied, 471 U.S. 1099 (1985).
 
 
 9
 If Weekly had explained her predicament to officer Cook when he first began talking with her, or at a minimum once he placed her under arrest, we would need to decide several difficult issues about the nature of the duress defense when a third-party is the subject of the threats. In this case, however, the district court was obviously correct in preventing Weekly from presenting her defense to the jury. Even if concerns for her fiance's safety deterred Weekly during the significant periods of time in which she appeared to be free to contact the police, cf. United States v. Alicea, 837 F.2d 103, 106-07 (2d Cir.), cert. denied, 488 U.S. 832 (1988), once the police contacted her and placed her under arrest there was no reason not to tell the police promptly of her supposed predicament. At that point, Weekly's fiance faced an imminent threat of harm, and a decision to share all the details with the arresting officers could only reduce the danger to her fiance. Under these circumstances, therefore, the defendant is not entitled to present the duress defense to the jury.[1]
 
 III.
 
 10
 Weekly also argues that the trial judge should have excluded her testimony in response to investigator Cook's question as to what was in the package found in Weekly's possession. Weekly argues that she was already in custody at the time Cook asked her the question and therefore her testimony should be excluded under Miranda v. Arizona, 384 U.S. 436 (1966). In determining whether an individual was in custody for the purposes of Miranda, the ultimate question is whether the "suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " Berkemer v. McCarty, 468 U.S. 420 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1225 (1983) (per curiam)). We have already noted that, "[t]he presence of the detectives in the doorway of the compartment and its adjacent aisle did not, we believe, prevent a reasonable person ... from declining to talk with the police or from leaving the compartment." United States v. Savage, 889 F.2d 1113, 1116-17 (D.C.Cir.1989); see also United States v. Brady, 842 F.2d 1313, 1315 n. 5 (D.C.Cir.1988). Under the facts of this case, we cannot say that Weekly was subject to a restriction on her freedom of action equivalent to a formal arrest. Moreover, had the admission of her ambiguous statement been erroneous, in the face of the overwhelming evidence of her guilt the error would have been harmless beyond a reasonable doubt. Arizona v. Fulminante, 111 S.Ct. 1246, 1255 n. 6 (1991); Chapman v. California, 386 U.S. 18, 24 (1967).
 
 
 
 [1]
 Weekly also claims that the district court erred in limiting the defense counsel's closing argument that she was a pawn set up by Lyons. This argument was an attempt to end-run the district court's refusal to allow Weekly to present her duress defense. Given our resolution of the duress issue, we find no merit in this claim