38 F.3d 1219
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Immanuel OKUNBOR, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Osaretin OMOBAGIE, Defendant-Appellant.
 Nos. 93-50029, 93-50030.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1994.
Decided Oct. 18, 1994.
 
 Before: D.W. NELSON, BEEZER, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Immanuel Okunbor ("Okunbor") and Osaretin Omobagie ("Omobagie"), Nigerian nationals, appeal their convictions on three counts of possession and distribution of heroin under 21 U.S.C. Sec. 841(a)(1), and one count of conspiracy under 21 U.S.C. Sec. 846. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 I. The Duress Defense.
 
 
 4
 The defendants first contend that the court erred in refusing to instruct the jury on duress. "The duress defense has three elements: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." United States v. Johnson, 956 F.2d 894, 897 (9th Cir.1992) (citations omitted). "A defendant is entitled to an instruction on the defense of duress only where the defendant makes a prima facie showing of the elements constituting the defense. Whether the defendant has made the requisite showing is a question of law to be reviewed de novo." United States v. Asuncion, 973 F.2d 769, 772 (9th Cir.1992) (citations omitted).
 
 
 5
 The appellants introduced the following evidence of duress: 1) Bellow told Omobagie that if he did not pay his debts, Bellow would kill him and his family in Nigeria; 2) Omobagie was threatened with a gun by one of Bellow's associates; 3) When Omobagie's apartment was ransacked, Bellow took credit for the incident and told Omobagie that he was lucky he wasn't home at the time; 4) Two days after Omobagie fled to Los Angeles, Bellow threatened Omobagie and Okunbor with a gun; 5) Bellow regularly made use of Okunbor's Los Angeles apartment, coming and going as he pleased and making numerous long-distance calls, including calls to Nigeria; 6) Omobagie received a worried letter from his mother stating that his brother had been threatened by Bellow concerning Omobagie's debts; and 7) Bellow was said to have contacts within the Nigerian military government who could carry out his threats.
 
 
 6
 The district court concluded that this evidence did not suffice to make out a prima facie case of duress. We agree.
 
 
 7
 There is no question that the evidence introduced by Omobagie and Okunbor could have led a reasonable jury to conclude that the men were acting under a "well-grounded fear" that they or their families would be subjected to death or serious bodily injury if they did not cooperate with Bellow. As the district court emphasized, however, the appellants did not make out a prima facie case with respect to the other elements of the duress defense.
 
 
 8
 The district court properly found that the appellants had innumerable opportunities to go to the police between the time that Bellow first put pressure on them to sell narcotics and the time of their arrest (a roughly seven-week period). At trial, in arguing that the court should instruct the jury on duress, defense counsel conceded that the defendants could have avoided the threat to themselves by going to the police, but contended that going to the police would have done nothing to lessen the threat to the defendants' families in Nigeria. Although there was some evidence that the men's families might be harmed were the men to disobey Bellow, the appellants did not present credible evidence that, throughout the seven-week period in which they were assisting Bellow with the heroin sales, there was someone in Nigeria ready and able to carry out the threats, or that there was nothing they could have done to protect their families apart from assisting Bellow. See, e.g., United States v. Contento-Pachon, 723 F.2d 691, 693-95 (9th Cir.1984), (holding that a threat to the defendant's family can be used to establish duress if the threat is immediate and there is evidence that the defendant had no way of protecting his family except by cooperating in the wrongdoing).
 
 
 9
 Significantly, the only evidence introduced by the defendants of an ongoing threat to their families in Nigeria consisted of the vague, unsubstantiated claim that Bellow had connections in the Nigerian military who would do his bidding. The letter from Omobagie's mother does not help the defendants in this regard. The letter states that Bellow himself threatened Omobagie's brother in Nigeria, thus providing no evidence that the threat continued when Bellow returned to the United States. Finally, the defendants introduced no evidence showing that they considered or attempted to find any alternative means of ensuring protection for their families apart from full cooperation with Bellow's drug dealing operation. See, e.g., United States v. Alicea, 837 F.2d 103, 106-07 (2d Cir.) (holding that the district court properly refused to instruct the jury on duress where there was no evidence that the defendants had "made any attempt either to seek protection from the authorities ... or to [convey] a warning ... to their relatives when they had an opportunity to do so"), cert. denied, 488 U.S. 832 (1988).
 
 
 10
 United States v. Contento-Pachon, 723 F.2d 691 (9th Cir.1984) is not to the contrary. In Contento-Pachon, the defendant was a taxicab driver in Bogota, Colombia who alleged that a passenger had forced him to transport cocaine into the United States on threat of death to his wife and three-year old daughter. The defendant complied, but, after cooperating fully with a customs search on his arrival in the United States, he was arrested at the border. The defendant claimed that he did not go to the police in Bogota because he believed they were corrupt. In determining that the defendant had introduced sufficient evidence of duress to raise a triable issue of fact, the court emphasized that the defendant was dealing with a dangerous man who had taken the trouble of finding out about the defendant's family life and the location of his residence, that the defendant was told he would be watched at all times, and that the defendant had reason to believe that the consequences for his family of any failure to comply would be immediate. The court also noted that it was for the jury to decide whether the opportunity to contact the Bogota police represented a reasonable opportunity for escaping the threatened harm. Although this last proposition provides some support for the defense's position, Contento-Pachon is distinguishable. First, because the defendant in Contento-Pachon was arrested at the border, he never had the opportunity, which Okunbor and Omobagie certainly had, to seek help from police in the United States. Second, the defense in Contento-Pachon, unlike the defense here, introduced credible evidence that the threat to the defendant's overseas family was immediate throughout the period of the criminal wrongdoing.
 
 
 11
 Accordingly, we hold that the district court properly refused to instruct the jury on duress.
 
 
 12
 II. Evidence Relating to the Proffered Duress Defense.
 
 
 13
 The appellants' second and final claim is that the district court erred by striking the evidence concerning duress from the record after it ruled that the defendants had not made out a prima facie case of duress. The appellants contend that the trial court's decision to strike was reversible error because the evidence in question also tended to negate the mens rea elements of the charged offenses, and, accordingly, should have been considered by the jury regardless of whether the defendants had established a prima facie case of duress. As the appellants' counsel conceded at oral argument, and as the record clearly shows, however, the defense failed to raise the mens rea objection at the time the evidence was stricken by the district court. Accordingly, we review only for plain error. See United States v. Lara-Hernandez, 588 F.2d 272, 274 (9th Cir.1978) ("Absent plain error, a conviction will not be reversed on evidentiary grounds not revealed to the trial court at the time of the assertedly erroneous ruling.").
 
 
 14
 We find no plain error on this record. Even if the defense evidence had not been stricken, a reasonable jury could have convicted the defendants on all counts. Substantial evidence showed that the defendants possessed the cocaine and intended to make the sales for which they were charged. The stricken evidence, concerning the threats from Bellow and his associates, could at most have established incomplete duress. While incomplete duress may be taken into account in sentencing, United States v. Johnson, 956 F.2d 894, 898 (9th Cir.1992), it is irrelevant to the 'knowingly or intentionally' element of the offense. Duress does not negate criminal knowledge, but instead excuses criminal conduct. United States v. Dominguez-Mestas, 929 F.2d 1379, 1382 (9th Cir.1991)."
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3